**Bradley Jay DEPEW, Plaintiff-Appellee,**

v.

**CITY OF ST. MARYS, GEORGIA,
Defendant-Appellant.**

**Charles Earl FOWLER,
Plaintiff-Appellee,**

v.

**CITY OF ST. MARYS, GEORGIA,
Defendant-Appellant.**

**Nos. 85–8287, 85–8288.**

United States Court of Appeals,
Eleventh Circuit.

April 28, 1986.

Richard A. Brown, Jr., Brunswick, Ga., for defendant-appellant.

Alva J. Hopkins, III, Folkston, Ga., for plaintiffs-appellees.

Before GODBOLD, Chief Judge, AN-DERSON, Circuit Judge, and ATKINS *, Senior District Judge.

ATKINS, Senior District Judge:

The City of St. Marys appeals from an adverse verdict in consolidated section 1983 actions which were based upon allegations that the city knowingly approved a pattern of improper police conduct consisting of acts of violence, intimidation, and humiliation.[1] Appellant maintains that the evidence was insufficient to prove a policy or custom establishing the city's fault regarding the constitutional deprivation of plaintiffs' rights. In addition, appellant maintains that plaintiffs were not denied due process because adequate state remedies exist.[2] Because we find that the evidence supports the verdict, and that the existence of a state remedy does not bar a section 1983 action of this type, we affirm.

## I

There was sufficient evidence before the jury from which the following facts could be inferred. On July 22, 1983, plaintiffs, Fowler and Depew, began repairing a customer's jeep at Fowler's garage. After completing the repairs at 1:30 a.m. the next day, plaintiffs took the jeep for a test drive. Fowler noticed a problem with the steering, so he allowed the jeep to veer to the right on two occasions and was subsequently stopped by Officer Kusek.

Fowler explained what he was doing, but was told he had to submit to a sobriety test although none of the officers detected any alcohol odor on his breath. Fowler readily agreed to take the test. Later, a lab report showed negative alcohol content.

While Kusek went to his car, apparently to obtain the test equipment, Fowler sat down in the jeep. When Kusek returned to the jeep, he grabbed Fowler around the neck and tried to drag him from the jeep. Fowler clung to the steering wheel, because he was surprised and frightened. When Kusek was unable to drag Fowler from the jeep, he demanded Depew's assistance. Depew, however, refused to interfere in any manner.

After a short while, several other officers arrived at the scene. One officer held Depew at gunpoint while he was handcuffed. Other officers helped Kusek drag Fowler from the vehicle. Then, Fowler was thrown to the ground and beaten by the officers before he was handcuffed. Depew was taken directly to jail, while Fowler was taken to a hospital for blood tests.

Plaintiffs subsequently filed these actions against the city and other parties. Plaintiffs alleged that their civil rights were violated due to the use of excessive or unreasonable force by the city's police officers. Liability was asserted against the city based on allegations that the mayor and city council had knowingly established a policy or custom of police misconduct. During trial, the evidence revealed several prior incidents of police misconduct. The evidence also indicated that the city failed to train, supervise, and discipline its police officers as required.

Ms. Donini testified that she had been harassed and forcibly placed in a police car

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. Plaintiffs did not appeal from verdicts for all other defendants nor contest the amount of the award.

2. Appellant also maintains that the pendent state law claims are barred under Georgia statutes. However, a recent case, *Toombs County, Georgia v. O'Neal,* 254 Ga. 390, 330 S.E.2d 95 (1985) has settled this issue. The defense of sovereign immunity is waived to the extent of the municipality's liability insurance coverage. *Id.* Neither *Acker v. City of Elberton,* 176 Ga. App. 580, 336 S.E.2d 842 (1985) nor any of the cases cited therein are relevant. The implied holding of *Acker* is that a municipality is not liable for the torts of police officers under a theory of respondeat superior. No such limitation on liability exists, however, when the officer's conduct is based on a city's custom utilizing excessive force to control its residents.

by the city's officers during their apprehension of a suspect on her property in 1981. When she complained of a violation of her rights, she was informed that she had no rights. Moreover, her complaints were largely ignored by the mayor and council members. In fact, the city commended the officers for their actions.

Ms. Crumbley, a council member since 1979, testified that the council was aware of the Donini incident and another incident involving Michael Dixon. Mr. Dixon had also initiated a lawsuit alleging police brutality. Crumbley denied that the officers acted improperly, and maintained that these cases were settled merely to preserve peace in the community.

Mr. Dyals, a council member since 1980 and former chairman of the police subcommittee, stated that he was unaware of any investigation or disciplinary measures regarding the Donini or Dixon matters. Similarly, when questioned about another incident involving David Chaney, he could not remember any investigation regarding the matter.[3]

Councilman Saunders initially testified that no action had been taken by the council in the Donini and Dixon matters; however, he later testified that the Donini matter had been investigated. He stated that the council concluded that the officers had acted correctly. He also admitted that no action had been taken to alter police policy.

Additional evidence indicated that other complaints of police misconduct existed. Officer Ring remembered a complaint involving Officer Murray, but could not recall the details. Similarly, Officer Wiggins, a former training officer, was disciplined when he struck a handcuffed prisoner for no apparent reason.

The evidence relating to the lack of proper training, supervision, and discipline consisted of various personnel evaluation reports, employee warning reports, directives promulgated by Chief Keele, and the testimony of various witnesses. For example,

Officer Ring was never disciplined other than by verbal reprimand although he had been cited for poor and improper work on many occasions. Similarly, while Officers Halley and Kaser were known to be hot tempered, both officers remained on patrol duty.

Chief Keele admitted that he had disciplinary problems with his officers. Nevertheless, he did little to rectify the problem. In fact, he stated, "At six bucks an hour, you take what you can get."

While the parties presented conflicting evidence, testimony indicated that the officers received inadequate training concerning the use of force in any given situation and when the use of deadly force was proper. Officer Sanders testified that no instructions on this subject were issued by the department. Moreover, Sanders candidly stated that excessive force was used against Fowler, but that it was nothing that he had not seen before.

The evidence also demonstrated that officers had little incentive to learn the policy and directives of the police department. If an officer failed an examination on the department's policy and directives, he remained in the same position, with the same duties, and he received the same wages. His sole penalty was that he was not promoted to a higher rank.

The mayor and council showed no inclination to change police policy. In fact, while the mayor and council members were aware of prior complaints of excessive force, they continued to assert that the department's supervision was satisfactory and that the officers were doing a good job.

At the conclusion of plaintiff's case, defendants moved for a directed verdict. The motion was denied. After the jury returned a verdict against the city, defendants moved for judgment notwithstanding the verdict. Finding the evidence sufficient to support plaintiffs' claims, the district judge denied this motion as well.

---

**3.** The Chaney incident was not explored during the trial because the court refused to allow certain witnesses, including a former St. Marys police officer, to testify. This incident also involved allegations of police brutality.

## II

The City of St. Marys contends that the evidence was insufficient to support the jury's verdict which was based on a finding of custom or policy on the part of the city resulting in plaintiffs' injuries. When considering the sufficiency of the evidence, this court must consider the evidence in a light most favorable to the plaintiffs and give them the benefit of all inferences which the evidence supports. This court must affirm unless it is convinced that there is a complete absence of probative evidence supporting the verdict or that the evidence so overwhelmingly supports the city that reasonable men in the exercise of impartial judgment could not render a verdict against it.

■ Section 1983 generally makes every person liable for conduct which deprives any citizen of the United States of any right, privilege or immunity secured by the Constitution. 42 U.S.C. § 1983 (1982). For purposes of this statute, municipalities are persons. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Section 1983 provides a fault-based analysis for imposing municipal liability; therefore, plaintiffs must establish that the city was the person who caused them to be subjected to their deprivation. To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality. Normally random acts or isolated incidents are insufficient to establish a custom or policy. *Bennett v. City of Slidell*, 728 F.2d 762, on rehearing, 735 F.2d 861 (5th Cir.1984) (*en banc*). However, the custom need not receive formal approval. *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036.

■ In this case, while the city provided rules and regulations for the operation of its police department, these rules were violated on numerous occasions. The city, however, failed to rectify the situation. The evidence revealed several incidents involving the use of unreasonable and excessive force by police officers. Therefore, the city had knowledge of improper police conduct, but failed to take proper remedial action. The continued failure of the city to prevent known constitutional violations by its police force is precisely the type of informal policy or custom that is actionable under section 1983. *See Herrera v. Valentine*, 653 F.2d 1220, 1224 (8th Cir.1981); *See also Turpin v. Mailet*, 619 F.2d 196 (2d Cir.), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980).

## III

Appellant maintains that plaintiffs failed to state a claim under section 1983, because they had an adequate remedy under state law and were not denied due process. Plaintiffs can pursue claims for false imprisonment, false arrest, and assault and battery in state court. Since state law provides plaintiffs with these post-deprivation remedies, appellant asserts that plaintiffs have received all the process which they are due under the Fourteenth Amendment.

*Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) is the starting point for discussion. *Parratt* involved a section 1983 suit for damages of $23.50 brought by an inmate for the negligent deprivation of property without due process of law. The court concluded that the due process clause was not violated because plaintiff had an adequate state remedy. A pre-deprivation hearing was not practical and a post-deprivation hearing was available. *Id.* at 543, 101 S.Ct. at 1916. The court emphasized the need for this result. Otherwise, every injury caused by a state official under color of law would constitute a due process violation and would be actionable under section 1983. *Id.* at 544, 101 S.Ct. at 1917. Justices Stewart and Powell concurred, because they did not believe the claim rose to the level of a deprivation of property under the Constitution. *Id.* 544, 546, 101 S.Ct. 1917, 1918. Justices White and Blackmun emphasized that the opinion was limited to deprivations of property and did not encom-

pass deprivations of life or liberty. *Id.* at 545, 101 S.Ct. at (White and Blackmun concurring).

In *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the court dealt with an intentional deprivation of property through an unauthorized act by a state employee. The court extended the holding in *Parratt* to include intentional deprivations of property where it was impractical to hold a pre-deprivation hearing and where an adequate state remedy existed. The court's holding, however, was based on the fact that the action was unauthorized.

> We reasoned that where a loss of property is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure, the state cannot predict when the loss will occur.

*Id.* 104 S.Ct. at 3203. The Court reasoned that while the action was under color of law, the unauthorized acts were beyond the control of the state. The Court then discussed *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). In *Logan,* the court reaffirmed *Parratt* but distinguished it.

> We specifically distinguished the case from *Parratt* by noting that *"Parratt* ... was dealing with a ... 'random and unauthorized act by a state employee ... [and was] not a result of some established state procedure.' " *Parratt,* we said, "was not designed to reach ... a situation" where the deprivation is the result of an established state procedure.

*Hudson,* 104 S.Ct. at 3203 n. 13 (footnotes omitted).

*Gilmere v. City of Atlanta,* 737 F.2d 894 (11th Cir.1984), *rev'd,* 774 F.2d 1495 (11th Cir.1985) *(en banc)* is the critical Eleventh Circuit decision regarding this issue. In *Gilmere,* plaintiff's decedent was killed by police officers during arrest. The court ruled that the state survivor tort remedy was all the process that was due because the conduct was random and unauthorized, and a pre-deprivation hearing was impractical. The court then extended the holdings of *Parratt* and *Hudson* to include negligent and intentional deprivations of liberty. The court avoided ruling on whether the same result would have been proper for a violation of substantive due process. In fact, the court specifically stated:

> Thus our holding today is in line with *Duncan v. Poythress,* 657 F.2d 691, 704 (5th Cir.1981) where the plaintiff's claim was held to be *not* barred by *Parratt* because it was based on the substantive due process right to vote. Additionally, the acts of the police here, although most unfortunate, did not "offend those canons of decency and fairness which express the notions of English-speaking peoples even toward those charged with the most heinous offense" or "shock the conscience," so as to violate the substantive due process guarantees "implicit in the concept of ordered liberty."

*Id.* at 910 (citations omitted).

Upon rehearing, the court stated:

> We accepted this case for *en banc* consideration primarily to determine whether *Parratt v. Taylor* precludes a claim by his administratrix under 42 U.S.C. § 1983 because state tort law provides a comparable remedy.

*Gilmere,* at 1496 (citations omitted). The court concluded that plaintiff's action was not barred.

> Having thus found that the scope of *Parratt* is necessarily limited by both the legislative history of section 1983 and the Supreme Court's own pronouncements, we perceive at least two alternative constitutional theories ... on which this plaintiff may predicate her section 1983 claim for relief against the police officers.

*Id.* at 1499.

In *Gilmere,* the court articulated two theories which allow injured parties to bring actions pursuant to section 1983 regardless of whether an adequate state remedy was available. First, an individual can maintain a section 1983 action whenever the government's conduct violates substantive due process. *Id.* at 1501. Similarly, an individual can bring a section 1983 action based upon Fourth Amendment violations. *Id.* at 1502.

■ Here, the jury determined that the City of St. Marys had implicitly ratified a custom or policy permitting the police to use excessive force against its citizens. The use of "excessive" force in making an arrest constitutes an unreasonable seizure. Therefore, the plaintiffs are entitled to maintain a section 1983 action in spite of the existence of any state remedies.[4]

### IV

The evidence was far from overwhelming, but it was sufficient to support the jury's verdict. The jury was entitled to draw all reasonable inferences from the evidence and evaluate the credibility of the witnesses. The evidence revealed sufficient prior incidents where the police had used excessive force to put the city on notice. Yet, the city failed to take proper remedial action. This evidence was sufficient to support a finding that the city's officials implicitly ratified a custom which resulted in plaintiffs' injuries. Based on this evidence, the plaintiffs are entitled to maintain a section 1983 action in federal court regardless of the existence of any state remedy. Thus, we AFFIRM.

---

**4.** *Gilmere* identifies the proper balancing tests which will guide parties in the future. *See id.* at 1501–02. In this case, these tests are obviously satisfied, so there is no need to remand the case.