Kevin Scott McKENNA, Plaintiff,

v.

COUNTY OF CLAYTON, STATE OF GEORGIA, et al., Defendants.

Civ. A. No. C85–3546A.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 23, 1987.

Frank Bradford, Aiken & Bradford, Marietta, Ga., for plaintiff.

George E. Glaze, Kirby A. Glaze, Steven M. Fincher, Claude L. Goza, Jr., Glaze & McNally, Jonesboro, Ga., for defendants.

ORDER

SHOOB, District Judge.

On July 10, 1983, the Clayton County Police Department discovered the body of murder victim Janice Jones ("Jones").

Plaintiff Kevin Scott McKenna ("McKenna") was arrested for Jones's murder, but the charges were eventually dropped for lack of evidence. Alleging that this arrest was improper, plaintiff brings this action under state law and under 42 U.S.C. § 1983. Defendants have moved for summary judgment under Rule 56, Fed.R. Civ.P. For the reasons stated below, the Court will deny in part and grant in part defendants' motion.

## I. *Background*

Clayton County police found Jones's body in a dirt road near a mobile home park. The coroner determined that Jones had been strangled. There is some dispute, however, as to whether the coroner estimated the time of death as July 6, 1983, or July 7, 1983. Defendant T. L. Brewer ("Brewer") was assigned to investigate Jones's murder, and it is his conduct that provides the primary basis for this suit.

Jones, who was also known as "Stormy," was a regular patron at a bar named "Diane's Bird." During Brewer's investigation, Diane Brand, owner of the bar, and Pat Boozer, a barmaid, stated Jones had been in the bar on July 5, 1983. Pat Boozer also stated Jones had talked with two men in green uniforms during that night. Diane Brand told Brewer the two men in question worked at a local truck stop. The two women accompanied Brewer to the truck stop and identified the uniformed men—McKenna and Toney Cloninger ("Cloninger"). Diane Brand later provided the following statement:

> On July 6, 1983, at approximately 4 a.m. I came to close up my place of business. When I got there, Stormy (Janice [Jones]) was standing in the door. I saw two males, which [sic] I identified later as . . . Kevin McKenna and Toney Cloninger. Those present were myself, Pat Boozer, Toney, Kevin, Jimmy Barton, and Stormy. I told everyone it was closing time and to please leave. Stormy went to the door and told Toney and Kevin, "Come on, assholes." Stormy left . . . and Toney and Kevin left about two minutes [later].

Plaintiff's Supplemental Reply to Defendants' Motion for Summary Judgment (Exhibit A).

After Diane Brand and Pat Boozer identified Cloninger and McKenna, Brewer asked the two suspects if they would consent to questioning. They did. It is undisputed that at this time McKenna denied knowing Jones and leaving the bar with her on July 5. In response to the instant motion, McKenna contends he did not leave the bar with Jones and he denied knowing her because he knew her only as Stormy. There is, however, no indication Brewer knew the source of McKenna's confusion.

Brewer asked McKenna to consent to additional questioning at the police station, and McKenna did so consent. At the police station, Jimmy Barton, who was present at Diane's Bird on July 5, identified McKenna as the driver of the car in which Jones left the bar. McKenna disputes the quality of Jimmy Barton's identification but does not deny that the identification was made.

It appears clear that Brewer arrested McKenna after Barton's identification but before defendant Wade Lucas issued an arrest warrant. Defendants theorize that McKenna was the last person to see Jones alive and that consequently his denials gave rise to probable cause for arrest. As discussed further below, the problem with defendants' theory is that the police file concerning the murder indicates Jones had visited her sister on July 7, 1983, a full day after McKenna's contact with Jones. Although defendants have had ample opportunity to brief the instant motion, they have not asserted Brewer was unaware of Jones's appearance on July 7.

McKenna was questioned for a substantial period of time and held in custody without bail for twelve days. At the preliminary hearing, however, the charges were dismissed for lack of evidence. With this background in place, the Court will address the pending motion, highlighting additional facts when appropriate.

## II. *Discussion*

### A) *The Controlling Standard*

The Court will first set forth the standard controlling practice under Rule 56. A

party moving for summary judgment bears the burden of demonstrating the absence of genuine disputes of material fact and factual inferences. *Thrasher v. State Farm Fire and Casualty Co.,* 734 F.2d 637, 638–39 (11th Cir.1984) (per curiam). Recent Supreme Court cases have made it clear that the moving party is not required to negate the nonmoving party's case; instead, "the burden on the moving party may be discharged by 'showing'—that is, pointing out ...—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* — U.S. ——, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.,* — U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence creating a triable issue. *Celotex,* 106 S.Ct. at 2553–54. Thus, summary judgment is appropriate where there is no genuine issue of material fact and, viewed in the light most favorable to the nonmoving party, the undisputed facts warrant judgment as a matter of law. *Id.* at 2511.

Defendants have offered several grounds for summary judgment, including the following: (1) that plaintiff's Fourth Amendment claim fails because probable cause supported his arrest; (2) that even if a technical violation of the Fourth Amendment occurred, Brewer is entitled to qualified immunity; (3) that plaintiff's section 1983 claim is barred by *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); (4) that plaintiff's claim against Clayton County fails under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); (5) that plaintiff's claim against the supervisory defendants falls short of the standard set forth in *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); and (6) that defendant Wade Lucas is absolutely immune to suit. The Court will address each of these arguments in turn.

### B) *The Fourth Amendment and Qualified Immunity*

■ Although Brewer arrested plaintiff before he obtained a warrant, the arrest would nonetheless be valid if supported by probable cause. *Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975). The test for determining whether probable cause exists cannot be formulated with precision. As the Supreme Court has explained,

> the probable-cause standard is ... a 'practical, nontechnical conception.' *Brinegar v. United States,* 338 U.S. 160, 176 [69 S.Ct. 1302, 1311, 93 L.Ed. 1879] (1979). 'In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' *Id.* at 175 [69 S.Ct. at 1310].

> As these comments illustrate, probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.

*Illinois v. Gates,* 462 U.S. 213, 231–32, 103 S.Ct. 2317, 2328–29, 76 L.Ed.2d 527 (1983).

■ Given the practical considerations at issue, courts look to the "totality of circumstances" in applying the probable-cause standard. *Id.* Thus, probable cause is present when the surrounding circumstances are sufficient to prompt a reasonably cautious person to conclude that an offense has been committed by the arrestee. *See, e.g., Wilson v. Attaway,* 757 F.2d 1227, 1235 (11th Cir.1985). Courts faced with Fourth Amendment questions are duly deferential to the practical realities of police work and a skilled officer's ability to detect criminal activity where a layman could not. *See generally Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Consequently, probable cause can be based in large measure on the collective knowledge of an investigative unit, *see United States v. Edwards,* 577 F.2d 883 (5th Cir.) (*en banc*), *cert. denied,* 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978), or the evasive or irregular behavior of a suspect. *See, e.g., United States v. Green,* 670 F.2d 1148

(D.C.Cir.1981). Simply stated, although there are limits, *see, e.g., United States v. Webster,* 750 F.2d 307, 322–24 (5th Cir. 1984), *cert. denied,* 471 U.S. 1106, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985), courts are reluctant to "second-guess" the seasoned judgment of a police officer, lest they stifle legitimate police work.

Another doctrine reflects this policy, viz., the qualified immunity standard set forth in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In that case, the Supreme Court reformulated the test controlling government officials' qualified immunity from suit. The *Harlow* test provides as follows:

> government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Id.* at 818, 102 S.Ct. at 2738. In designing this standard, the Supreme Court expressly relied on objective factors that can be applied at an early stage of litigation, so that officials will be spared the burden of defending against meritless suits. *Compare Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975) (setting forth the prior qualified immunity standard which relied on subjective as well as objective factors). The justification for this approach is evident:

> Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate.... But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken

'with independence and without fear of consequences.'

*Harlow,* 457 U.S. at 819, 102 S.Ct. at 2739 (quoting *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967)).

[3] Applying the above-stated principles, the Court concludes plaintiff's Fourth Amendment claim against Brewer can withstand summary judgment. If the evidence known to Brewer truly suggested McKenna was the last person seen with Jones before the murder, that fact combined with McKenna's denials would arguably constitute probable cause for arrest. At the very least, the issue would be sufficiently close to allow Brewer immunity from suit.[1] But, as stated previously, the police file indicates Jones had appeared at her sister's home a full day after her only known contact with McKenna.[2] Absent some evidence to the contrary, the Court must assume for the purpose of this motion that Brewer knew of Jones's visit to her sister.[3] Moreover, if there is any other evidence suggesting probable cause existed, defendants have not brought it to the Court's attention.

In sum, at this juncture, factual disputes in the record preclude a holding that probable cause existed or that Brewer is entitled to qualified immunity.

### C) *Daniels v. Williams*

In *Daniels* and a companion case, *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), the Supreme Court reconsidered an aspect of its holding in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Defendants maintain that *Daniels* forecloses the claims advanced in this case because plaintiff has alleged only negligent conduct. The Court disagrees.

---

1. Of course, the probable cause requirement reflects well-settled law. Still, where probable cause is absent but that determination is exceedingly difficult, holding an officer liable would run counter to the rationale expressed in *Harlow. See Malley v. Briggs,* —— U.S. ——, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

2. It should also be noted that the statement offered by Jones's sister implicated a suspect other than McKenna.

3. In fact, even if Brewer did not actually know of the visit, it is arguable that such knowledge should be imputed. *Cf., e.g., United States v. Edwards,* 577 F.2d 883, 895 (5th Cir.) (*en banc*), *cert denied,* 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978). The Court need not reach this issue, however.

■ As a preliminary matter, defendants read *Daniels* too broadly. The *Daniels* Court offered the following statement of the issue it faced:

> In *Parratt v. Taylor,* we granted certiorari ... 'to decide whether mere negligence will support a claim for relief under § 1983.' 451 U.S., at 532 [101 S.Ct., at 1911]. After examining the language, legislative history and prior interpretations of the statute, we concluded that § 1983 contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right. *Id.,* at 534–535 [101 S.Ct., at 1912]. We adhere to that conclusion. But in any given § 1983 suit, the plaintiff must still prove a violation of the underlying constitutional right; and depending on the right, merely negligent conduct may not be enough to state a claim.

106 S.Ct. at 664. The court went on to conclude that mere negligence could not constitute a "deprivation" of life, liberty, or property under the Fourteenth Amendment;[4] this conclusion overruled *Parratt* in part. But, contrary to defendants' assertion, it has little relevance to a section 1983 claim involving Fourth Amendment rights. As the above quotation indicates, *Daniels* did not alter *Parratt* to the extent the latter case holds that section 1983 does not include a state-of-mind requirement. Because a police officer's subjective intent is irrelevant to a finding of probable cause, a plaintiff need not establish intentional conduct or even gross negligence to establish a violation of the Fourth Amendment.[5] Moreover, even if the Court were to accept defendants' reading of *Daniels,* plaintiff has alleged conduct that would satisfy a gross negligence standard, *see supra* at note 4, and there is some factual support for those allegations. For example, it is arguable that gross negligence can be found in Brewer's apparent failure to appreciate the significance of the statement offered by Jones's sister.

**4.** The *Daniels* Court left open the question whether gross negligence can give rise to a due process violation.

**5.** As noted above, where the probable cause determination is quite close, an officer will be

### D) *Clayton County—The Monell Standard*

■ *Monell* holds that a municipality can be held liable under section 1983 if the constitutional violation at issue stems from a policy or custom that has been tacitly or explicitly sanctioned. 436 U.S. at 691, 98 S.Ct. at 2036. In most cases, isolated incidents unrelated to a specific policy cannot give rise to municipal liability. *Bennett v. City of Slidell,* 728 F.2d 762, *reh'g en banc,* 735 F.2d 861 (5th Cir.1984), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985).

■ Here, plaintiff relies chiefly on *Depew v. City of St. Marys, Georgia,* 787 F.2d 1496 (11th Cir.1986), where the Eleventh Circuit affirmed a verdict holding a city liable for ignoring a persistent pattern of unconstitutional conduct. There is a quantum jump between *Depew* and this case. Plaintiff has adverted only to three prior false arrest claims advanced against defendants. Section 1983 suits and state law false arrest claims are common occurrences in the life of a modern police officer. The mere existence of such suits means little. If the three suits plaintiff cites involved clear constitutional violations, a jury issue would exist under *Depew.* But defendant has stated without contradiction that none of these suits was resolved on the merits. While this fact does not, in itself, preclude plaintiff's argument, plaintiff has neither suggested the three suits clearly notified Clayton County of unconstitutional conduct nor submitted any evidence to that effect.

Accordingly, the Court will grant summary judgment as to Clayton County.

### E) *The Supervisory Defendants—Rizzo v. Goode*

■ Plaintiff has asserted claims against the Clayton County Board of Commission-

entitled to qualified immunity. *See supra* at note 1. But that an officer is immune from suit does not mean no constitutional violation has occurred.

ers and Chief of Police James D. Parker. To establish supervisory liability under section 1983, a plaintiff must establish an "affirmative link" between the action of which he complains and the activities of the defendant supervisor. *Rizzo*, 423 U.S. at 362, 96 S.Ct. at 600; *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1504 (11th Cir.1985) (*en banc*). There is no evidence whatsoever of any supervisory involvement in this case.

Accordingly, the Court will grant summary judgment as to the supervisory defendants.

### F) *Defendant Wade Lucas—Absolute Immunity*

Plaintiff asserts that Wade Lucas violated the Fourth Amendment by issuing an arrest warrant without probable cause. Lucas has submitted an affidavit stating that he issued the warrant in his capacity as a magistrate. The general rule is that a neutral and detached magistrate is absolutely immune from suit. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Plaintiff argues that Lucas is not truly a magistrate and thus does not qualify for immunity, but plaintiff has not submitted any factual support for this argument.

Accordingly, the Court will grant summary judgment as to defendant Lucas.

Finally, the Court notes that plaintiff has not responded to defendants' motion for summary judgment with respect to his claims for libel and slander, intentional infliction of emotional distress, and punitive damages. These claims shall be deemed abandoned. *See* L.R. 220–1(b)(1), N.D.Ga.

### III. *Conclusion*

The Court DENIES IN PART and GRANTS IN PART, to the extent indicated above, defendants' motion for summary judgment. A pretrial order shall be submitted within twenty days of the date of this order. Because this order narrows the scope of the case, the Court thinks it advisable for the parties to conduct another settlement conference. The parties are DIRECTED to do so and to report the results

of that conference within ten days. If the parties think the Court's aid will facilitate settlement, they should schedule a conference with the docket clerk.