[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13123

Non-Argument Calendar

_____

KEITH TAIG,

individually, and on behalf of others similarly situated,

Plaintiff-Appellant,

*versus*

CITY OF VERO BEACH,

LIEUTENANT JOHN PENDERSEN,

in his individual capacity,

DETECTIVE PHIL HUDDY,

in his individual capacity,

DETECTIVE SEAN CROWLEY,

in his individual capacity,

DETECTIVE MIKE GASBARRINI, et al.,

Defendants-Appellees.

———————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:21-cv-80391-RLR

———————————

Before WILLIAM PRYOR, Chief Judge, and JORDAN and BRANCH, Circuit Judges.

PER CURIAM:

Keith Taig appeals the dismissal of his complaint against the City of Vero Beach and the summary judgment in favor of Chief David Currey, retired Captain Kevin Martin, Lieutenant John Pedersen, Detective Phil Huddy, Detective Sean Crowley, and Detective Mike Gasbarrini. 42 U.S.C. § 1983. Taig filed a putative class action alleging violations of his Fourth Amendment rights after the police department monitored and recorded him during its investigation of prostitution, racketeering, and human trafficking at a massage spa. The district court dismissed the complaint against the city for failure to state a claim and entered summary judgment in favor of the officers based on qualified immunity. We affirm.

## I. BACKGROUND

After police began receiving anonymous complaints about a local massage spa, the police department's special investigations

unit and the United States Department of Homeland Security began investigating the spa for suspected prostitution, racketeering, and human trafficking. An undercover detective visited the spa twice in September 2018, and both times he was asked if he wanted sexual acts performed for money. Officers spoke with two men who had left the spa, and both men reported that a woman had offered them sexual acts in exchange for money. Officers conducted trash pulls and retrieved items including used condoms and tissues with semen on them. Three weeks of surveillance revealed that women working at the spa slept there overnight, and the spa had only male customers. Based on these findings, officers sought an order authorizing surreptitious video surveillance inside the spa.

On November 27, 2018, a state judge issued an "Order for the Surreptitious Entry and Installation of Electronic Surveillance Camera." The order provided: "[Y]ou . . . are hereby commanded in the name of the state of Florida, . . . to enter and install . . . video surveillance cameras, and to monitor these surveillance cameras for a period of no longer than 30 days. . . ." The order further stated, "[T]he executing officers shall take steps to minimize the invasion of privacy to any parties not engaged in the unlawful acts set forth in the affidavit. The officers shall also make efforts to minimize the disclosure of this surveillance operation to only those sworn law enforcement officers pertinent and relevant to this surreptitious investigation . . . ." On December 28, 2018, a second order with identical language extended the surveillance period for 30 days. The order did not expressly prohibit or authorize recording the video surveillance.

On November 29, 2018, video-only cameras were installed at the front desk and in two massage rooms. The cameras transmitted a live feed to monitors inside a controlled room at the police department. The silent video feed, which could not be turned off remotely, was recorded on a hard drive. The police department required a username and password to access the video feed in the controlled evidence room and logged the time and date that anyone entered the room. In January 2019, the State Attorney's Office directed the officers to stop recording sex acts and to focus on investigating racketeering and human trafficking. The officers curtailed monitoring the video feed within the spa and focused on monetary and mobile surveillance.

During the 30 days that the officers monitored the video feed, the officers saw 145 customers enter massage rooms, and 142 of those customers participated in sex acts with a masseuse. Taig was one of those customers. He was arrested for soliciting prostitution based on his visit to the spa on December 27, 2018. Later, Taig successfully moved to suppress the video evidence, and an intermediate appellate court upheld the suppression order.

Taig sued the city and various police officials alleging that the video surveillance violated the Fourth Amendment. 42 U.S.C. § 1983. His amended complaint alleged that the city and officers violated his right to be free of unreasonable search and seizure and that they had a custom or policy of failing to train and supervise employees in minimization techniques. He cited Florida statutes that prohibited video recording in areas like restrooms or changing

rooms and limited the availability of audio surveillance to certain major criminal offenses. He also moved to certify the class and to appoint a class representative and class counsel.

The district court granted the city's motion to dismiss for failure to state a claim. It ruled that Taig alleged no prior misconduct that could support his argument that the city had a custom of allowing or had adopted policies allowing constitutional violations. It ruled that Taig also failed to allege facts to support his argument that the city deliberately chose not to train and supervise employees of the police department, and his allegation that the city was deliberately indifferent to his rights was conclusory.

The district court granted summary judgment in favor of the officers based on qualified immunity. It ruled that Taig failed to identify any clearly established law prohibiting the officers from conducting or recording the surveillance, and the Florida statutes were inapposite. It ruled that Taig failed to identify any clearly established law that put the officers on notice that their mitigation measures were constitutionally inadequate. It rejected his alternative argument that the surveillance and minimization techniques were so egregious that every reasonable officer would have known that their conduct violated the Fourth Amendment. It explained that the warrant expressly permitted video surveillance, and the officers used at least some minimization techniques by restricting and logging physical entry into the secured room and requiring a username and password to access the video feed. The district court also rejected Taig's failure-to-train claim because he failed to

provide evidence establishing that the officers had actual or constructive notice that an omission in their training program caused the officers to violate his rights. The district court ruled that, without evidence of any prior misconduct or a violation of a clearly established right, the officers could not be liable under a theory of supervisory liability. The district court denied Taig's motion for class certification.

## II. STANDARD OF REVIEW

We review *de novo* the dismissal of Taig's amended complaint against the city. *Turner v. Williams*, 65 F.4th 564, 577 (11th Cir. 2023). The alleged facts "must make a claim for relief not merely *possible*, but *plausible*." *Id.* "We review *de novo* whether . . . [law enforcement] officers are entitled to immunity." *Black v. Wigington*, 811 F.3d 1259, 1265 (11th Cir. 2016). We resolve any issues of material fact in Taig's favor and then address the legal question whether the officers are entitled to qualified immunity. *See Penley v. Eslinger*, 605 F.3d 843, 848–49 (11th Cir. 2010).

## III. DISCUSSION

We divide our discussion in two parts. First, we address Taig's claims against the city. Second, we address his claims against the officers.

*A. Taig's Claims Against the City Fail.*

Taig argues that the district court erred by dismissing his claims against the city. He argues that he sufficiently alleged that the officers had a repeated policy or custom of failing to minimize

their video surveillance, which "demonstrated practices on the part of the City that constituted Fourth Amendment violations." He argues that the facts supporting his failure-to-train-and-supervise claim against the city were sufficient to withstand dismissal.

To impose liability on the city, Taig must allege facts that would establish that the city had a policy or custom that constituted deliberate indifference to a right protected by the Constitution. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Because Taig attributes the alleged constitutional violation to the city's failure to train, he must plead facts establishing there existed "[a] pattern of similar constitutional violations by untrained employees," *Connick v. Thompson*, 563 U.S. 51, 62 (2011); *see Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998). He has not done so.

Taig's amended complaint identified no other instance in which the police department's surveillance of suspected criminal activity rose to the level of a constitutional violation. Even assuming that a constitutional violation occurred, Taig sought to impose liability on the city based on one investigation. Because "random acts or isolated incidents are insufficient to establish a custom or policy," *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986), the district court did not err by dismissing the amended complaint against the city for failing to state a claim for relief.

*B. Qualified Immunity Bars Taig's Claims Against the Officers.*

Qualified immunity shields officials acting within their discretionary authority from liability when their conduct does not violate a federal constitutional right that was clearly established at

the time of the challenged action. *Williams v. Aguirre*, 965 F.3d 1147, 1156 (11th Cir. 2020). If the official is acting within the scope of his discretionary authority when he commits the allegedly unlawful actions, the plaintiff must prove "that qualified immunity is not appropriate." *Penley*, 605 F.3d at 849. "We are required to grant qualified immunity to a defendant official unless the plaintiff can demonstrate two things: (1) that the facts, when construed in the plaintiff's favor, show that the official committed a constitutional violation and, if so, (2) that the law, at the time of the official's act, clearly established the unconstitutionality of that conduct." *Singletary v. Vargas*, 804 F.3d 1174, 1180 (11th Cir. 2015). We may consider these two requirements in any order. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009).

Taig argues that the officers were not entitled to qualified immunity because they failed to minimize their invasion of the spa customers' privacy as the warrant required. He argues that the officers had clear guidance that customers in a private massage room were entitled to an expectation of privacy because various state statutes prohibited video recording in areas like restrooms or changing rooms and limited the availability of audio surveillance to certain major criminal offenses. *See* Fla. Stat. §§ 810.145(1)(c), 877.26, 934.07, 933.02.

Taig failed to establish that the officers' conduct violated a clearly established constitutional prohibition. *See Singletary*, 804 F.3d at 1180. Qualified immunity may only be denied when the officers have "fair and clear warning of what the Constitution

requires," such that a reasonable officer would understand that his conduct violates a constitutional right. *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 617 (2015). A constitutional violation may be "clearly established" by controlling precedent with indistinguishable facts, a broad statement of principle in the Constitution that clearly establishes the violation, or where the officer's conduct so egregiously violated the constitutional right that prior caselaw was unnecessary to provide fair notice. *See Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291–92 (11th Cir. 2009).

Taig identifies no caselaw clearly establishing minimization requirements for covert, silent video surveillance of criminal activity pursuant to a warrant. Instead, he cites to *United States v. Mesa-Rincon*, 911 F.2d 1433, 1442 (10th Cir. 1990), and the decision of the Fourth District Court of Appeal of Florida upholding the suppression of the spa video. But neither were decided at the time of the relevant conduct by the Supreme Court, this Court, or the Florida Supreme Court. *See J W by & Through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259 (11th Cir. 2018). And the state statutes Taig cites do not clearly establish a federal constitutional right.

The officers' actions also were not so egregious that every reasonable officer would have known that they violated the Fourth Amendment. *See Lewis*, 561 F.3d at 1291–92. The officers, working with the Department of Homeland Security, obtained several warrants authorizing the surreptitious video surveillance. Although the warrants did not expressly allow video recording, the warrants

did not prohibit it either. The cameras transmitted no audio, which complied with the order. And the officers employed at least some minimization techniques, including reducing the number of hours each day that officers monitored the video feed, restricting access to the video feed with a username and password, monitoring the video feed for only 30 out of 60 available days, and securing the hard drive in the evidence room. Moreover, although the order required the officers to "take steps to minimize the invasion of privacy to any parties not engaged in the unlawful acts set forth in the affidavit," Taig did not fall within that class of persons.

Taig argues that the facts established that the officers failed to train and supervise other officers and each other and that, if they had, they would not have violated his Fourth Amendment rights. We disagree. To succeed on this claim, Taig was required "to demonstrate that the [supervisory officers] had actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights and that armed with that knowledge the supervisor chose to retain that training program." *Keith v. DeKalb County, Georgia*, 749 F.3d 1034 (11th Cir. 2014) (quotation marks omitted, second alteration in original). But Taig failed to establish that the officers knew or should have known that the department's minimization techniques were constitutionally deficient or that the alleged deficiency was caused by an omission in their training. Because the district court did not err by granting summary judgment in favor of the officers, we need not address Taig's argument that the district court erred by denying his motion for class certification.

22-13123                Opinion of the Court                11

## IV. CONCLUSION

We **AFFIRM** the dismissal of Taig's complaint against the city and the summary judgment in favor of the officers.