[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13528

_____

DORAL 10, LLC,
LIZBETH ARENCIBIA,
RENE ARENCIBIA,

                                        Plaintiffs-Appellants,

*versus*

CITY OF DORAL,
a Florida Municipal Corporation,
EE&G ENVIRONMENTAL SERVICES, LLC,
BCC ENGINEERING, LLC,
JOSE MARIO ALVAREZ, et al.,

                                        Defendants-Appellees,

2                    Opinion of the Court                    20-13528

JVA ENGINEERING CONTRACTOR, INC.,

                                                    Defendant-Appellee.

                    _____

                Appeal from the United States District Court
                    for the Southern District of Florida
                    D.C. Docket No. 1:19-cv-24830-JLK

                    _____

Before WILSON, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants Doral 10, LLC, Lizbeth Arencibia, and Rene Arencibia (collectively, Doral 10) contracted with the City of Doral (the City) to buy Doral 10's property for use in an upcoming roadway project.  Before closing on the property, the City and the city managers, through various contractors, illicitly used Doral 10's property and caused a significant amount of damage to the property.  Doral 10 sued the City, the city managers, and various contractors (collectively, the defendants) under 42 U.S.C. § 1983 for violating Doral 10's Fourth and Fifth Amendment rights.  Relevant to this appeal, the district court dismissed Doral 10's Amended Complaint, stating that Doral 10 failed to allege municipal liability against the City.

After careful review and with the benefit of oral argument, we find that, at the motion to dismiss stage, Doral 10 has plausibly alleged that the city managers acted as final policymakers in authorizing the use of Doral 10's property. Thus, we reverse the district court's dismissal of Doral 10's § 1983 claims against the City.

## I.    BACKGROUND

Accepting the well-pleaded factual allegations in Doral 10's Amended Complaint as true, as we must, Doral 10 alleges the following. *See MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1228 (11th Cir. 2023). On January 9, 2019, Doral 10 and the City signed a Letter of Intent for the City to buy Doral 10's property for $10,750,000. Doral 10's property abutted a roadway slated for an improvement project (Improvement Project). The City awarded JVA Engineering Contractor, Inc., the contract to complete the Improvement Project. The City entered an agreement with BCC Engineering, LLC, to provide engineering services.

The City "unlawfully and without consent or authorization knowingly seized and utilized" Doral 10's property before the parties closed on the property. Relying on its inchoate agreement to buy Doral 10's property, the City "falsely and knowingly represented" to the various contractors that "the City had secured Doral 10's consent or authorization to utilize" Doral 10's property for the Improvement Project, "when it had not."

During the five-month-long occupation of the property, the City, "in concert and together" with two different city managers, Edward Rojas and Albert Childress, and various contractors,

knowingly seized and utilized Doral 10's property as a staging area for the Improvement Project. During that occupation, the contractors took clean fill material from Doral 10's property and mixed it with contaminated soil excavated from the Improvement Project. As a result, the contractors placed a large pile of contaminated soil on Doral 10's property, causing damage. Additionally, the contractors used the clean fill material from Doral 10's property to create embankments for the Improvement Project. Doral 10 knew nothing about this occupation, nor did it approve or authorize the use of its property. "The City took active efforts to prevent [Doral 10] from learning of the entry onto, use of, and contamination of" Doral 10's property.

While the occupation was underway, the defendants, including Rojas and Childress, circulated reports that "contained detailed pictures of work done" on the Improvement Project and the staging area set up on Doral 10's property. The defendants also "held bi-weekly progress meetings." Doral 10 alleged that Rojas and Edwards "at all times acted under color of state law as the City's final policymaker[s]," and that they "personally participated in the described conduct" and were "responsible for the damages to [Doral 10's] property." Thus, throughout the occupation, the city manager—Rojas initially, and then Childress—were involved. Indeed, the city managers negotiated and "agreed to the essential contract terms" of the Letter of Intent with Doral 10. The City's elected officials later ratified the agreement previously negotiated by the city managers. And Doral's "City Manager, City staff, and other responsible persons then unilaterally and without any due

process or permission or consent from" Doral 10 allowed for the illicit occupation of Doral 10's property by various private contractors.

As a result of the various contractors' actions, which were taken "with the City's consent," the City notified Doral 10 that its property "required environmental remediation at a minimum cost of $2,800,000.00 to excavate three feet of surface material" found throughout Doral 10's property. The City used EE&G Environmental Services, LLC, as a construction remediation company for the property. According to Doral 10, the City used the remediation cost to affect the underlying sale, which, at the time of this appeal, had not been effectuated by the parties. In total, at least 800 feet of soil on Doral 10's property was "disturbed, devalued, contaminated, and affected by the actions" of the City, the city managers, and the various contractors.

Doral 10 alleged § 1983 claims against the City, two city managers, and private contractors for violating its Fifth Amendment rights to due process and just compensation, and for violating its Fourth Amendment right to be free from unreasonable searches and seizures. As to its claims against the City, Doral 10 alleged that "[t]he City's decisions were authorized and/or most certainly condoned and approved by the decisions of a government's lawmakers such that they constituted the acts of its policymaking officials" and constituted "practices that [were] so persistent and widespread as to practically have [had] the force of law." Doral 10 also asserted that "the City failed to correct the constitutionally offensive actions

of its employees and authorized agents, such that the City's actions rose to the level of a custom or policy because the City acted with deliberate indifference towards the misconduct of its authorized agents." Moreover, Doral 10 alleged that the two relevant city managers, Rojas and Childress, were the "City's final policy-maker[s]" with respect to these allegations, "were aware and *either personally authorized or ratified the alleged constitutional law violations by the City, its employees, and the private [contractor] defendants*." (Emphasis added).

The defendants moved separately to dismiss the claims asserted against them. The district court granted the defendants' motions to dismiss. Relevant to this appeal, the district court found that Doral 10 failed to identify an official custom or practice by the City that supported a theory of municipal liability under § 1983. The district court also found that Doral 10 failed to show that the contractors (including JVA) were state actors subject to liability under § 1983.

Doral 10 timely appealed the dismissal of its claims against the City and JVA. Before oral argument, we granted Doral 10's motion to dismiss its appeal against JVA.[1]

---

[1] After we dismissed Doral 10's claims against JVA from this appeal, JVA moved for its attorney's fees. JVA's Motion for Appellate Attorney's Fees is **TRANSFERRED** to the district court for its consideration of whether JVA is entitled to appellate attorney's fees and the amount of appellate attorney's fees to which JVA is entitled, if any. *See* 11th Cir. R. 39-2(d).

## II.    STANDARD OF REVIEW

"We review de novo the district court's grant of a motion to dismiss . . . for failure to state a claim, accepting the factual allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (per curiam). Although the complaint need not include detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Still, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

## III.    ANALYSIS

Section 1983 provides a cause of action by private citizens against a "person" acting under color of state law for violating their constitutional rights and other federal laws. 42 U.S.C. § 1983. A municipality is a "person" within the meaning of the statute. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 688–89 (1978).

"It is well established that a municipality may be held liable under § 1983 only when the deprivation at issue was undertaken pursuant to city 'custom' or 'policy,' and not simply on the basis of *respondeat superior*." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479 (11th Cir. 1991). A plaintiff "has two methods by which to establish a [city's] policy: identify either (1) an officially promulgated [city] policy or (2) an unofficial custom or practice of the

[city] shown through the repeated acts of a final policymaker for the [city]." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

Under the first method, "a single incident of unconstitutional activity" can establish municipal liability if the incident "was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). Under the second method, the plaintiff must show the custom is "a longstanding and widespread practice [that] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Brown*, 923 F.2d at 1481. For this method, "random acts or isolated incidents are insufficient to establish a custom or policy." *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986).

Under both methods, the plaintiff must show the policymaker either ratified the unconstitutional conduct, *Hoefling v. City of Miami*, 811 F.3d 1271, 1279–80 (11th Cir. 2016), or delegated to a subordinate official whose "discretionary decisions are not constrained by official policies and are not subject to review," *Mandel v. Doe*, 888 F.2d 783, 792 (11th Cir. 1989); *see also Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1291 (11th Cir. 2004) ("A municipal governing body may be held liable for acts or policies of individuals to whom it delegated final decisionmaking authority in a particular area."). We have also noted that the fact that someone "acted as a final decision maker in [one] context does not mean that he always acts as such." *Holloman*, 370 F.3d at 1292–93. Indeed, the

"theme reiterated through much of our caselaw" is that "in assessing whether a governmental decision maker is a final policy maker, we look to whether there is an actual 'opportunity' for 'meaningful' review" of the decisionmaker's actions in the relevant context. *Id.* at 1292 (quoting *Oladeinde v. City of Birmingham,* 230 F.3d 1275, 1295 (11th Cir. 2000)).

While we agree that Doral 10's Amended Complaint does not stake out a plausible claim for the second method, our agreement ends there. We conclude that Doral 10 has made sufficient allegations for the first method to satisfy the pleading requirements at the motion to dismiss stage. Specifically, when the City entered and began using Doral 10's property without its authorization or consent in January 2019, the City seized Doral 10's property—a "single incident of unconstitutional activity." *Tuttle,* 471 U.S. at 823.

Turning to who was the final policymaker, Doral 10 has pleaded sufficient allegations, that taken as true, could establish that the city managers were the final policymakers when it came to the management of the contract for the Improvement Project.[2]

---

[2] Counsel for Doral 10 confirmed as much at oral argument when counsel stated:

> The City Council is exactly the final decisionmaker in the decision whether or not to issue the contracts for [the City]. Once the contract is issued, the management of the contract, within the terms of it, is completely up to the city manager. . . . Once the contract is executed, meaning signed, the city manager is the person who manages the contract. We are talking

In reviewing the complaint—and taking its allegations as true, as we must—Doral 10 alleges that Rojas was the city manager until Childress replaced him around February 2019. Doral 10 also alleges that Rojas and Childress, as the city managers, acted as final policymakers with regard to the Improvement Project. For support, Doral 10 alleges that Rojas and Childress authorized and personally participated in the at-issue conduct alleged in the Amended Complaint. Doral 10 further alleges that, at a minimum, Rojas and Childress maintained some form of delegated authority from the City to effectuate the implementation of the Improvement Project, given their day-to-day involvement in managing it and their ability to authorize private contractors.

Next, "[t]o determine if someone is a final policy maker, we look not only to 'state and local positive law,' but also 'custom and usage having the force of law.'" *Holloman*, 370 F.3d at 1292 (quoting *McMillian v. Johnson,* 88 F.3d 1573, 1577 (11th Cir. 1996)). The City's charter vests the City Council "with all legislative powers of the City." Doral Municipal Charter, art. II, § 2.01. But the charter

> about the management of the contract, not the issuance of the contract, here. The city manager, once a contract is issued and approved by the [City Council] is the decisionmaker, in terms of how to manage that [contract]. . . . We have alleged . . . that [the city manager] is the decisionmaker. . . . There is certain plausibility in alleging that [the city manager] is the decisionmaker, in showing that, once the contract has been issued, . . . it is up to the [city manager] to manage [the contract]. . . . [T]he purpose of a city manager is to run the day-to-day operation of the city.

also gives the city manager the power to "[e]xecute contracts, deeds and other documents on behalf of the City as authorized by the Council" and the power to "[p]erform such other duties as are specified in th[e] Charter or as may be required by the Council." *Id.*, art. III, § 3.04(9), (11). Further, as applicable to the Improvement Project, the City Council awarded the relevant private contractor, JVA, the Improvement Project contract in Resolution No. 19-26 but also authorized the city manager to "execute the construction contract" and to "take such further action as may be necessary to implement the purpose and the provisions of th[e] Resolution." *Id.* §§ 2–4. Viewing these provisions in the light most favorable to Doral 10 and its pleaded allegations, it is plausible that the City vested the city managers with final policymaking authority when it came to decisions about the management of the Improvement Project, including the decision to authorize the use of Doral 10's property as a staging area for the project.

Summary judgment and evidence produced through discovery might very well prove the dissent correct about whether the City Council could review the respective city managers' actions in this project. But given the intimate involvement of the city managers leading up to, and during the occupation of the property, and given Doral 10's allegation that they wielded final policymaking authority, Doral 10 has sufficiently pleaded enough facts to survive the City's motion to dismiss. *See Brown*, 923 F.2d at 1480 ("Whether a particular official has final policymaking authority is a question of state law . . . . Our task, however, is not to determine who, in fact, wields final policymaking authority but only to

consider whether plaintiff has alleged sufficient facts to withstand the city's motion to dismiss. . . .  The district court on remand will need to consider all available evidence of policymaking authority before deciding the issue of municipal liability."); *see also Hoefling*, 811 F.3d at 1280 ("We therefore believe that identifying and proving that a final policymaker acted on behalf of a municipality is 'an evidentiary standard, and not a pleading requirement.'" (quoting *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002))).

## IV.    CONCLUSION

Accordingly, we reverse the district court's dismissal of Doral 10's § 1983 claims against the City and remand for further proceedings.

**REVERSED AND REMANDED.**

20-13528                LUCK, J., Dissenting                1

LUCK, Circuit Judge, Dissenting:

Doral 10, LLC alleges that the City of Doral unreasonably seized its property, in violation of the Fourth Amendment, and took its property without just compensation, in violation of the Fifth Amendment, when the City Manager used Doral 10's real property in a roadway improvement project without obtaining Doral 10's permission or compensating Doral 10. Doral 10 contends that the City is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) because the City Manager was the final policymaker in the relevant area of the City's affairs. Because Doral 10 is wrong about the City's final policymaker—and thus does not make necessary allegations against the actual final policymaker—I would affirm the dismissal of the claims against the City.

The identity of the final policymaker is a question of state law. *See Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1480 (11th Cir. 1991). According to the City's charter, the City Council wielded "all legislative powers of the City," Doral Municipal Charter, art. II, § 2.01, and the City Manager had the power to "[e]xecute contracts, deeds[,] and other documents on behalf of the City *as authorized by the Council*," *id.*, art. III, § 3.04(9) (emphasis added). Here, through Resolution No. 19-04 sections 2 and 3, the City Council authorized the City Manager to purchase Doral 10's property and to take "such further action as may be necessary" for the purchase. The City Council also authorized the City Manager, through Resolution No. 19-26 sections 3 and 4, to execute the contract for the roadway improvement project and to take "such

further action as may be necessary" for the contract.  Under state law, the City Council was the final policymaker for taking or buying property and authorizing the roadway improvement project.

Doral 10 asserts that "controlling law already recognizes that city managers in . . . mayor-council-manager local governments [in the City's county] are the final decisionmakers."  But the cases that Doral 10 cites for this proposition say that the City Manager was the final policymaker for the City's employment decisions, not for property acquisition or roadway improvement.  As we've explained, "[a]n official or entity may be a final policymaker with respect to some actions but not others."  *McMillian v. Johnson*, 88 F.3d 1573, 1578 (11th Cir. 1996).  The policymaker inquiry focuses on the "particular subject matter" of the alleged constitutional violation.  *Morro v. City of Birmingham*, 117 F.3d 508, 514 (11th Cir. 1997) (explaining that "a municipal official does not have final policymaking authority *over a particular subject matter* when that official's decisions are subject to meaningful administrative review" (emphasis added)); *Bannum, Inc. v. City of Ft. Lauderdale*, 901 F.2d 989, 997 (11th Cir. 1990) (explaining that for "a single decision [to] be sufficient to establish unconstitutional municipal policy under section 1983 . . . [t]he challenged action must have been taken pursuant to a policy adopted by the official or officials responsible for making policy *in that particular area of the city's business*" (emphasis added) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion))).  Here, the City's charter and the resolutions gave the City Council the authority to take or purchase property and authorize contracts.

20-13528                 LUCK, J., Dissenting                 3

Because the City Council was the final policymaker, its decisions—not the City Manager's—represented the City's official policy. And because Doral 10 does not plausibly allege a taking or seizure by the City's final policymaker—the City Council—it has not established that the City was liable for the City Manager and JVA Engineering's alleged unconstitutional acts. Thus, I would affirm the district court's dismissal of the claims against the City.