Reina GOMEZ, Plaintiff,

v.

METRO DADE COUNTY, FLORIDA,
Defendant.

No. 91–0560–CIV–HIGHSMITH.

United States District Court,
S.D. Florida.

July 24, 1992.

Robert I. Spiegelman, Spiegelman & Spiegelman, Miami, Fla., for plaintiff.

Robert A. Ginsburg, Dade County Atty., Lee Kraftchick, Asst. County Atty., Miami, Fla., for defendant.

ORDER ON DEFENDANT DADE COUNTY'S MOTION FOR SUMMARY JUDGMENT AND ORDER OF PARTIAL FINAL SUMMARY JUDGMENT

HIGHSMITH, District Judge.

THIS CAUSE comes before the Court upon Defendant Metro Dade County's Mo-

tion for Final Summary Judgment with Respect to Plaintiff Reina Gomez, filed April 24, 1992.

## I. Background

Plaintiff Reina Gomez ("Gomez") alleges that Metro Dade County ("County") violated 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964 by allowing a co-employee, Hector Gutierrez ("Gutierrez"), to sexually harass her, and by demoting her from her position as a site manager in the Dade County Housing and Urban Development Department ("HUD"). Gomez also seeks compensatory damages from the County based on its allegedly negligent supervision and retention of Gutierrez.

The following facts are not in dispute. The County has employed Gomez in a variety of positions for eighteen years. (Gomez's Statement of Undisputed Facts, at ¶ 2, D.E. # 85.) In May 1989, Gomez was promoted to the position of site manager in HUD. (Bilateral Pretrial Stipulation, at 3, D.E. # 88.) Her immediate supervisor in this position was district supervisor Arturo Velasquez ("Velasquez"), whose superior was Gutierrez, a regional manager. (Gomez's Statement of Undisputed Facts, at ¶ 2, D.E. # 85.) Sexual harassment complaints have been filed against Gutierrez in the past. (The County's Response to Gomez's Statement of Undisputed Facts, at ¶ 3, D.E. # 94.)

As a site manager, Gomez was required to serve a one year probationary period, during which time she was subject to demotion back to her previous position. (Bilateral Pretrial Stipulation, at 3, D.E. # 88.) All employees hired as site managers for HUD prior to May 15, 1989, had to sign agreements to become certified by the United States Housing and Urban Development Department in housing management. (Gomez's Statement of Undisputed Facts, at ¶ 7, D.E. # 85.) If these employees failed to become certified, the individuals agreed, pursuant to written agreement, to vacate the job. (Gomez's Statement of Undisputed Facts, at ¶ 7, D.E. # 85.) This certification required passing a written examina-

tion. (The County's Statement of Undisputed Facts, at ¶ 13, D.E. # 75.) No such requirements existed when Gomez applied for and was appointed site manager on May 15, 1989. (Gomez's Statement of Undisputed Facts, at ¶ 7, D.E. # 85.) Seven months into Gomez's one year probationary period, Earl Phillips ("Phillips") became director of HUD and changed the policy of HUD by requiring all site managers who (1) had previously not been trained or (2) who had not passed the full examination, to take the test. (Gomez's Statement of Undisputed Facts, at ¶ 8, D.E. # 85.) Phillips reduced the two year period previously allowed for taking and passing the test to one year. (Gomez's Statement of Undisputed Facts, at ¶ 8, D.E. # 85.) Gomez took the exam twice and both times the County advised her that she did not pass.[1] (Gomez's Statement of Undisputed Facts, at ¶ 9, D.E. # 85.) Gomez has never seen the graded tests or her scores and alleges that she did in fact pass the test. (Gomez's Statement of Undisputed Facts, at ¶¶ 6, 9, D.E. # 85.) After failing the test for the second time, the County informed Gomez that due to her inability to meet the requirements necessary for the satisfactory performance of her duties as a site manager, she had failed her probationary period. (Bilateral Pretrial Stipulation, at 4, D.E. # 88.) As a result, Gomez was returned to her former department, in the last classification for which she had held permanent status, that of eligibility interviewer. (Bilateral Pretrial Stipulation, at 4, D.E. # 88.) Gomez asserts that her demotion was in retaliation for making the sexual harassment complaint against Gutierrez and not as a result of her test scores.

The County does not move for summary judgment on the basis that Gutierrez did not sexually harass Gomez, but rather the County asserts that it may not be held liable for such harassment. (The County's Response to Gomez's Statement of Undisputed Facts, at ¶ 4, D.E. # 94.) Therefore, the specific acts of alleged sexual harass-

---

1. Each time Gomez took the test, the County was informed that Gomez failed the test by the organization that conducted the test. (Bilateral Pretrial Stipulation, at 4, D.E. # 88.)

ment are immaterial for purposes of this motion for summary judgment.

## II. Standard of Review

In deciding a summary judgment motion, a court must apply the standard in *Fed. R.Civ.P.* 56(c):

> The standard sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In applying this standard the Eleventh Circuit has stated that:

> The party seeking summary judgment bears the exacting burden of demonstrating that there is no genuine dispute as to any material fact in the case. In assessing whether the movant has met this burden, the courts should view the evidence and all favorable inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant.

*Clemons v. Dougherty County, Ga.*, 684 F.2d 1365, 1368–69 (11th Cir.1982) (citations omitted). Moreover, "the party opposing the motion for summary judgment bears the burden of responding *only after* the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has provided significant additional guidance as to the evidentiary standard which trial courts should apply in ruling on a motion for summary judgment:

> [The summary judgment] standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must

direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern R. Co.*, 320 U.S. 476, 479–480, [64 S.Ct. 232, 234, 88 L.Ed. 239] (1943). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court in *Anderson* further stated that "[t]he mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252, 106 S.Ct. at 2512. The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir.1991). "If the evidence is merely colorable ... or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–251, 106 S.Ct. at 2510–2511.

## III. 42 U.S.C. § 1983

Gomez asserts that the County violated her civil rights under the First and Fourteenth Amendments of the United States Constitution, pursuant to 42 U.S.C. § 1983, by demoting her because she spoke out against sexual harassment. The County moves for summary judgment as to Gomez's § 1983 claim on the basis that Gomez cannot establish the existence of a genuine issue of material fact as to whether her demotion was the result of any County custom or policy.

In *Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978), the United States Supreme Court created a right of action against local government units for deprivation of federal rights in violation of 42 U.S.C. § 1983. The Supreme Court states that municipal liability under § 1983 attached *only* when a constitutional deprivation occurs pursuant to a municipality's "official policy." [2] *Id.* at 694, 98 S.Ct. at

---

**2.** The term "official policy" is not limited to written laws. It may also include a custom or usage, "even though such a custom or usage has not received formal approval through the municipal body's official decisionmaking channels." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036.

According to the Supreme Court, Congress included customs and usages in § 1983 because customs and usages may be so widespread and accepted that they have the force of law. *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

2037. Thus, under *Monell*, "recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality', that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986).

Subsequent to the *Monell* decision, the Eleventh Circuit explained how these general principles apply to § 1983 actions involving allegedly discriminatory employment practices. *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474 (11th Cir.1991). The court stated that a public employee can establish municipal liability under § 1983 in either of two ways: (1) by showing that the decisionmaker possessed "final authority to establish municipal policy with respect to the action ordered." *Brown*, 923 F.2d at 1480 (quoting *Pembaur*, 475 U.S. at 481, 106 S.Ct. at 1299); or (2) by showing that her injury was the result of a municipal custom, defined as "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Brown*, 923 F.2d at 1481 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988) and quoting *Adickes*, 398 U.S. at 167–68, 90 S.Ct. at 1613–14.) Gomez seeks to hold the County liable under both of these theories.[3]

### Final Policymaker

■■■ In order to impose liability under the final policymaker theory of municipal liability, "the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in *that area* of the city's business." *Praprotnik*, 485 U.S. at 123, 108 S.Ct. at 924 (emphasis in original). "[T]he mere delegation of authority to a subordinate to exercise discretion is not sufficient to give the subordinate policymaking authority. Rather, the delegation must be such that the subordinate's discretionary decisions are not constrained by official policies and are not subject to review." *Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir.1990) (quoting *Mandel v. Doe*, 888 F.2d 783, 792 (11th Cir.1989)). It is "the trial judge [who] must identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional statutory violation at issue." *Jett v. Dallas Independent School District*, 491 U.S. 701, 736, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989).

■■■ This Court finds that Phillips does not have final policymaking authority to demote subordinates. The Dade County Charter authorizes the Board of County Commissioners to pass ordinances and resolutions, including rules and regulations concerning County employment. (The County's Statement of Undisputed Facts, at ¶ 2, D.E. # 75, Exhibit 1, Metropolitan Dade County Charter § 1.01.A.)[4] The County Manager oversees the administration of operations, and appoints a Personnel Director who administers "the personnel and civil service programs and the rules governing them." (The County's Statement of Undisputed Facts, at ¶ 3, 4, D.E. # 75, Charter § 3.01, 3.04, and 4.05.B.)[5] Therefore, it is apparent that Phillips' deci-

---

167–68, 90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142 (1970)).

**3.** Though she attempts to do so in her memorandum of law opposing summary judgment, Gomez never asserted in her Complaint that her alleged sexual harassment and demotion were the result of an unwritten custom or policy. In her Complaint, Gomez only alleged that the County is responsible for the decision to demote her because Phillips, the director of Dade County HUD, "had final policymaking authority concerning employment decisions for employees of Dade County HUD." (Complaint, at ¶ 20, D.E.

# 1.) In considering the County's motion for summary judgment, the Court has, nonetheless, construed Gomez's Complaint to allege that her sexual harassment and demotion were the result of both a final policymaking decision, and the result of an unwritten custom.

**4.** Gomez agrees that this fact is not in dispute. (*See* Gomez's Statement of Undisputed Facts, at ¶ 1, D.E. # 85.)

**5.** Gomez agrees that this fact is not in dispute. (*See* Gomez's Statement of Undisputed Facts, at ¶ 1, D.E. # 85.)

sions regarding demotions are constrained by ordinances and resolutions passed by the Board of County Commissioners or the County Manager. Merely because Phillips may have exercised the authority to demote Gomez does not lead to the conclusion that he is able to establish official county policy on whether to demote a County employee. Although the Board of County Commissioners has permitted Phillips necessary discretion in hiring, firing, and demoting subordinates, there is no evidence that Phillips has been delegated the power to establish final employment policy. Therefore, Phillips is not a final policymaker whose employment decisions could subject the City to liability under § 1983.[6]

### Municipal Custom

■ Gomez asserts for the first time in her memorandum of law in opposition to the County's motion for summary judgment that there is a custom of non-feasance by the County when sexual harassment claims are repeatedly filed against upper management officials. In order to impose liability under a "custom or usage" theory of municipal liability, Gomez must prove a longstanding and widespread prac-

tice that is deemed authorized by policy-making officials because they must have known about it and failed to stop it. *Brown*, 923 F.2d at 1481. Random acts or isolated incidents are usually insufficient to establish a custom or policy. *Depew v. City of St. Mary's, Ga.,* 787 F.2d 1496, 1499 (11th Cir.1986). To hold the County liable, the custom or policy must be the moving force of the constitutional violation at issue. *Samples on Behalf of Samples v. City of Atlanta,* 846 F.2d 1328, 1333 (11th Cir.1988). Even if a custom or policy exists, Gomez must prove that there is a causal link between the custom or policy and the constitutional deprivation. *Parker v. Williams,* 862 F.2d 1471, 1477 (11th Cir. 1989).

■ As evidence of a custom of non-feasance, Gomez states that there have been at least four complaints of sexual harassment filed against Gutierrez along with anonymous other allegations.[7] In addition, the employer's affirmative action department made a written recommendation to the director of HUD to consider the allegations of sexual harassment against Gutierrez.[8] Gomez asserts that Phillips

---

**6.** Gomez asserts for the first time in her memorandum of law in opposition to the County's motion for summary judgment that the Affirmative Action Office and Velda McCray have a policy of not investigating complaints of sexual harassment when there is attorney involvement. McCray, as a subordinate of Phillips, clearly does not have final policymaking authority. (The County's Reply Memorandum in Support of Motion for Summary Judgment, Exhibit 3, Affidavit of Velda McCray, at ¶ 9, D.E. # 92.) The Affirmative Action Office, which is under the control of the City Manager and the Board of County Commissioners, also does not have the authority to establish a final policy of not investigating complaints of sexual harassment. The County has adopted a specific written policy requiring the investigation of sexual harassment complaints. Nothing in that policy permits the Affirmative Action Office to ignore complaints simply because an employee has an attorney. Therefore, neither Velda McCray nor the Affirmative Action Office are final policymakers with respect to the decision to investigate or not to investigate complaints of sexual harassment.

**7.** Gomez states that the four individuals who have been alleged victims of sexual harassment against Gutierrez are Lucia Llorente, Rosalind

DePardee, Maria DeArmas, and Gomez herself. The Equal Employment Opportunity Commission has found that there is no reasonable cause to believe that Lucia Llorente suffered from any sexual harassment. (The County's Memorandum in Support of Motion for Summary Judgment, D.E. # 74, Exhibit 4.) The County's Affirmative Action Office has investigated DePardee's claim and found no reasonable cause to believe that her allegations of sexual harassment are true. (Gomez's Exhibits in Opposition to the County's Motion for Summary Judgment, D.E. # 83, Exhibit B.) Although the investigation of Gomez is now closed, the County has offered to reopen the investigation any time Gomez desires. Lastly, anonymous complaints are clearly not sufficient to support a finding of knowing acquiescence in a widespread custom of harassment.

**8.** The recommendation states:

"... it is strongly suggested that H.U.D. management consider all of the information on file or otherwise relating to sexual harassment allegations against Gutierrez and weigh it carefully."

(Gomez's Exhibits in Opposition to the County's Motion for Summary Judgment, D.E. # 83, Exhibit D.)

knew of these allegations and that both Phillips and the County have failed to take appropriate action in response to these allegations.

This Court finds as a matter of law that the allegations offered by Gomez as support for her theory that a *de facto* custom existed are nothing more than isolated incidents that clearly cannot be said to establish or create a "custom" or "widespread practice". The evidence does not show that the County has a policy of non-feasance when sexual harassment complaints are filed against upper management employees. Additionally, there is no evidence that the County, as opposed to Phillips [9], knew about these allegations of sexual harassment or acquiesced in such a custom. All of Gomez's evidence at most points to an isolated failure on the part of Phillips to discipline Gutierrez and prevent him from further sexual harassment after investigations were conducted by the Affirmative Action Office. This falls well short of the mark of a County policy of non-feasance with respect to sexual harassment complaints that is so permanent and well settled as to constitute a force of law. *See Prieto v. Metropolitan Dade County*, 718 F.Supp. 934 (S.D.Fla.1989) (evidence of four isolated incidents involving only the plaintiff over two year period insufficient to establish a custom under § 1983); *Burnette v. Ciolino*, 750 F.Supp. 1562 (M.D.Fla.1990) (five isolated incidents of police shootings were insufficient to establish police custom of failing to maintain a proper system for the investigation of incidents of firearm discharge under § 1983). Therefore, the County's Motion for Summary Judgment with respect to Gomez's claim for the City's violation of § 1983 is GRANTED. Final Summary Judgment is entered on behalf of the County and against Gomez with respect to her § 1983 claim.

## IV. Title VII claim

Gomez asserts that the County violated Title VII of the Civil Rights Act of 1964 by allowing Gutierrez to sexually harass her and by demoting her. The County moves for summary judgment, asserting that the undisputed facts show (1) that Gomez's demotion was not the result of sexual harassment; and (2) that once the County was notified of Gomez's allegation of a sexually hostile environment, it took prompt remedial action.

The courts recognize two forms of sexual harassment: *quid pro quo* sexual harassment and hostile work environment sexual harassment. *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65–66, 106 S.Ct. 2399, 2404–2405, 91 L.Ed.2d 49 (1986).

> "*Quid pro quo* sexual harassment occurs when an employer alters an employee's job conditions as a result of the employee's refusal to submit to sexual demands. Hostile environment sexual harassment occurs when an employer's conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or otherwise offensive environment.'"

*Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1315 (11th Cir.1989) (citations omitted) (quoting from *Vinson*, 477 U.S. at 65, 106 S.Ct. at 2404). Gomez alleges both forms of sexual harassment.

### Quid Pro Quo

Gomez's *quid pro quo* claim is based on the allegation that she, in fact, passed the required examination and that her demotion from site manager back to eligibility interviewer was in retaliation for failing to acquiesce to Gutierrez's sexual demands and for complaining about his conduct. Gomez asserts that factual issues regarding the passage or failure of the test, policy changes regarding the necessity of taking the test, and policy changes as to the time permitted to take the test, are unresolved.

This Court finds that the undisputed facts show that Gomez was demoted be-

---

**9.** As discussed, *supra*, Phillips is not a final policymaker. Therefore, even if he had knowledge of a custom of non-feasance with respect to investigating and disciplining employees who are charged with sexual harassment, and acquiesced in such custom, liability cannot extend to the County, because such acts cannot be said to constitute County policy.

cause the County believed that she failed the required examination. Seven months into Gomez's probationary period, Phillips changed the policy of HUD by requiring all site managers who had previously not been trained or who had not passed the examination, to take the examination. (Gomez's Statement of Undisputed Facts, at ¶ 8, D.E. # 85.) Additionally, Phillips reduced the period allowed for taking the test from two years to one year. (Gomez's Statement of Undisputed Facts, at ¶ 8, D.E. # 85.) Gomez took the exam twice, and both times the County was informed by the testing company that Gomez had failed the test. (Bilateral Pretrial Stipulation, at 4, D.E. # 88.) Consequently, Gomez, as well as four other employees hired at the same time as Gomez who failed to pass the test within their probationary period were, like Gomez, demoted to their previous position. (The County's Statement of Undisputed Facts, at ¶ 18, D.E. # 75, Exhibit 10, Memoranda from E. Phillips to Various Site Managers re: Failure of Probation Period.)[10]

■■■■ The Eleventh Circuit has explained that "Title VII only proscribes employment discrimination on the basis of race, color, religion, sex, or national origin." *Gilchrist v. Bolger*, 733 F.2d 1551, 1553 (11th Cir. 1984). Whether the employer's practice "is a good employment policy or a bad one, or even a policy prohibited under other laws, Title VII does not prohibit employment decisions based on that policy provided the policy is applied equally to all employees." *Id.* Phillips, rightly or wrongly, decided to require all of his department's site managers to pass the examination within one year of their probationary period. That requirement, whether Gomez agrees with it or not, does not violate Title VII because it was applied equally to all employees hired at the same time as Gomez.

Gomez has offered no evidence, other than her own belief, which could support her assertion that she in fact passed the test. Gomez was treated exactly the same way as any other site manager hired at the same time as herself. Gomez's bare assertion that she passed the test and was demoted as a retaliatory move for complaining about sexual harassment, is at most, pure conjecture. This evidence is not significantly probative enough, whereby, a jury could reasonably find in favor of Gomez. Gomez has not raised any genuine issues of material fact relating to her *quid pro quo* sexual harassment claim. Therefore, this Court finds that as a matter of law, the County is entitled to summary judgment with respect to Gomez's *quid pro quo* sexual harassment claim.

### Hostile Work Environment

■■■■ In order to hold the County liable under a hostile environment claim of sexual harassment, Gomez must show that the County knew or should have known of the alleged harassment, but failed to take prompt remedial action. *Steele*, 867 F.2d at 1316. The County does not contest that it had knowledge of the alleged harassment, but seeks to avoid liability on the assertion that it has an effective grievance procedure and took prompt remedial action. The mere existence of a grievance procedure and a policy against discrimination does not insulate the City from liability. *Vinson*, 477 U.S. at 72, 106 S.Ct. at 2408. The Eleventh Circuit has stated that "an employer may be insulated from liability for hostile working environment sexual harassment where (1) the employer has an explicit policy against sexual harassment; and (2) it has effective grievance procedures 'calculated to encourage victims of harassment to come forward' that the plaintiff did not employ." *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1560 (11th Cir, 1987) (quoting from *Vinson*, 477 U.S. at 73, 106 S.Ct. at 2408).

---

**10.** Gomez admits that she has no knowledge of anyone hired in the same group as herself that was given more than one year to pass the examination. (The County's Memorandum in Support of Motion for Summary Judgment, D.E. # 74, Exhibit 6, Gomez deposition at 40–41.) Phillips confirms that no employees hired at the same time as Gomez were given extensions of the probationary period in order to take the test again, although such extensions were granted to employees hired before Gomez. (The County's Memorandum in Support of Motion for Summary Judgment, D.E. # 74, Exhibit 7, Phillips deposition at 19–25.)

 This Court finds that there remain genuine issues of material fact concerning the effectiveness of the County's grievance procedure, and whether the County took prompt remedial action. On May 5, 1990, Gomez met with HUD Deputy Director Gregory Byrne and Phillips to discuss her complaints of sexual harassment against Gutierrez. (Gomez's Statement of Undisputed Facts, at ¶ 5, D.E. # 85.) Phillips turned the matter over to Velda McCray, of the Affirmative Action Office for an investigation. (The County's Statement of Undisputed Facts, at ¶¶ 20, 21, D.E. # 75.) Gomez, on May 11, 1990, contacted Carmen Dieguez ("Dieguez"), of the Affirmative Action Office, stating that she wished to file a complaint against Gutierrez. (The County's Memorandum in Support of Motion for Summary Judgment, D.E. # 74, Exhibit 13, Affidavit of Dieguez.) Dieguez set up an appointment for May 15, 1990, to discuss Gomez's complaint. (The County's Memorandum in Support of Motion for Summary Judgment, D.E. # 74, Exhibit 13, Affidavit of Dieguez.) Gomez failed to keep that appointment and did not call to cancel or reschedule. (The County's Memorandum in Support of Motion for Summary Judgment, D.E. # 74, Exhibit 13, Affidavit of Dieguez.)

Subsequently, McCray attempted to contact Gomez by phone and through the mail by a certified letter sent on June 14, 1990, but was unsuccessful in her attempts to speak with Gomez concerning her sexual harassment complaint. (The County's Memorandum in Support of Motion for Summary Judgment, D.E. # 74, Exhibit 12, Memorandum from V. McCray to S. Dallas re: Reina Gomez, dated June 14, 1990.) On June 21, 1990, Gomez's attorney contacted McCray concerning the certified letter McCray had sent. (The County's memorandum in Support of Motion for Summary Judgment, D.E. # 74, Exhibit 12, McCray Memorandum.) McCray, on the advice of her superiors, said she would not be re-

sponding to Gomez's attorney. (The County's Memorandum in Support of Motion for Summary Judgment, D.E. # 74, Exhibit 12, McCray memorandum.) According to Dieguez, Gomez stated to her in a conversation on June 22, 1990, that Gomez did not keep her appointment because after speaking with her attorney, it was best for her to complain to the Equal Employment Opportunity Commission rather than to waste time pursuing the County's internal processes. (The County's Memorandum in Support of Motion for Summary Judgment, D.E. # 74, Exhibit 13, Affidavit of Dieguez.) Gomez stated that Dieguez had told her that if she had an attorney or was looking for one that the Affirmative Action Office would not help her. (Gomez's Exhibits in Opposition to the County's Motion for Summary Judgment, D.E. # 83, Gomez deposition, at 143–144.) [11]

Due to the above facts, neither Dieguez nor McCray was able to investigate Gomez's complaint. Therefore, at the present time no Affirmative Action Office investigation has taken place concerning Gomez's allegations, although one was attempted.

From the above facts it is clear that the County does have an internal grievance procedure, and that an investigation of Gomez's complaint of sexual harassment was attempted. A dispute remains about whether Gomez's failure to invoke the grievance procedure was the result of her own choice or because the County refused to investigate her complaint due to the fact that Gomez hired an attorney. A dispute also exists as to whether this grievance procedure is effective. Although the County claims that in the past two years, the County's Affirmative Action Office has investigated seven sexual harassment claims that resulted in the disciplining of the alleged harasser (The County's Statement of Undisputed Facts, at ¶ 24, D.E. # 75.), it is clear that no action was ever taken to put a

11. Although Gomez now asserts that her reason for not pursuing an investigation with the Affirmative Action Office is because they have a policy of not investigating complaints once an attorney becomes involved, Gomez stated in a newspaper article that the reason was that she "knew from [her] meeting with Mr. Phillips [that the Affirmative Action Office] wouldn't do anything." (The County's memorandum in Support of Motion for Summary Judgment, D.E. # 74, Exhibit 1, New Times, Nov. 28–Dec. 4, 1990, at 20.)

stop to Gutierrez's alleged acts of harassment. The fact that four complaints of sexual harassment have been filed against Gutierrez casts further doubt on the effectiveness of such a grievance procedure. Because genuine issues of material fact remain as to whether the County took prompt remedial action and whether the grievance procedure is indeed effective, the County's motion for summary judgment with respect to Gomez's claim of hostile work environment sexual harassment is DENIED.

## V. State Law Negligent Retention and Supervison of Gutierrez [12]

■ Gomez asserts that the County negligently retained and supervised Gutierrez resulting in her sexual harassment and subsequent demotion. The County moves for summary judgment on the basis that to the extent that Gomez's claim is one for negligence, it is barred by the exclusivity provision of the state's Workers' Compensation Act (Fla.Stat. § 440.11); and to the extent that Gomez's claim involves a deliberate intent to injure, it is barred by Fla. Stat. § 768.28(9)(a).

Florida's Workers' Compensation Act, Fla.Stat. § 440.11 (West 1991), states that an employer's liability to its employees "shall be exclusive and in place of all other liability." The Florida Supreme Court has stated that it is "now well established in our law, that workers' compensation generally is the sole tort remedy available to a worker injured in a manner that falls within the broad scope and policies of the workers' compensation statute." *Byrd v. Richardson–Greenshields Securities*, 552 So.2d 1099, 1100 (Fla.1989). However, in *Byrd*, the Florida Supreme Court created an exception to the exclusivity rule for sexual harassment claims. In *Byrd*, female employees brought claims for assault and battery, intentional infliction of emotional distress, and negligent hiring and retention of employees based upon male employees repeatedly touching and making verbal sexual advances to them in the workplace. The Florida Supreme Court stated:

"In light of this overwhelming public policy, we cannot say that the exclusivity rule of the workers' compensation statute should exist to shield an employer from all tort liability based on incidents of sexual harassment. The clear public policy emanating from federal and Florida law holds that an employer is charged with maintaining a workplace free from sexual harassment. Applying the exclusivity rule of workers' compensation to preclude any and all tort liability effectively would abrogate this policy, undermine the Florida Human Rights Act, and flout Title VII of the Civil Rights Act of 1964.

This, we cannot condone. Public policy now requires that employers be held accountable in tort for the sexually harassing environments they permit to exist, whether the tort claim is premised on a remedial statute or on the common law....

Similarly, to the extent that the claim alleges assault, intentional infliction of emotional distress arising from sexual harassment of the specific type of battery involved in this case, the exclusivity rule also will not bar them. This is so because these causes of action address the very essence of the policies against sexual harassment—an injury to intangible personal rights."

*Byrd*, 552 So.2d at 1103–4 (footnotes omitted).

Therefore, in light of the strong public policy against sexual harassment in the workplace, this Court interprets *Byrd* as holding that the exclusivity rule of the workers' compensation statute does not bar Gomez's claim of negligent retention and supervision.

The County also asserts that to the extent that Gomez's claim involves a deliber-

---

**12.** The County, in its motion, has not asserted that it is entitled to sovereign immunity for the negligent retention and supervision of Gutierrez; but rather, has argued the negligence claim based on the exclusivity provision of the Workers' Compensation Act and Fla.Stat. § 768.28(9)(a). Therefore, the Court assumes, as a matter of law, that the County is not entitled to sovereign immunity for the conduct complained of by Gomez in her negligence claim.

ate intent to injure[13], her claim is barred by Fla.Stat. § 768.28(9)(a).[14] As Gomez is asserting a claim involving negligence and not a claim involving a deliberate attempt to injure, the Court need not address the County's argument with regard to Fla.Stat. § 768.28(9)(a) because it is misplaced.[15] Thus, the County's motion for summary judgment with respect to Gomez's claim for negligent retention and supervision of Gutierrez is DENIED.

### VI. Conclusion

Thus, it is hereby

ORDERED AND ADJUDGED that:

(1) The County's motion for summary judgment with respect to Gomez's § 1983 claim is GRANTED. Final Summary Judgment as to Gomez's § 1983 claim, be and the same is hereby entered in favor of Metro Dade County, Florida.

(2) The County's motion for summary judgment as to Gomez's Title VII claim is GRANTED with respect to Gomez's *quid pro quo* sexual harassment claim and DENIED with respect to Gomez's hostile work environment claim.

(3) The County's motion for summary judgment with respect to Gomez's claim for negligent retention and supervision of Gutierrez is DENIED.

DONE AND ORDERED.

---

**13.** The only exceptions to the exclusivity rule of the Workers' Compensation Act are where the employer's actions exhibit a deliberate intent to injure, the employer engages in conduct substantially certain to result in injury or death, or where the conduct arises from a sexual harassment claim. *Elliot v. Dugger,* 579 So.2d 827 (1st DCA Fla.1991).

**14.** Fla.Stat. 768.28(9)(a) makes the state immune form suit for acts of employees committed in bad faith or with malicious purpose or in

a manner exhibiting wanton and willful disregard of human rights, safety, or property.

**15.** The County erroneously believes that claims for intentional infliction of emotional distress and assault and battery are included under the sexual harassment exception to the Workers' Compensation Act, while claims for negligence are not included. This Court has found that the exclusivity provision of the Workers' Compensation Act does not bar Gomez's claim for negligent retention and supervision of Gutierrez.