Charles Larry **MINDLER**, Plaintiff,

v.

**CLAYTON COUNTY, GEORGIA,** Clayton County Board of Commissioners, Ronnie Clackum, Robert Keller, William Lemacks, as Advisors and Directors of the Narcotics Squad of Clayton County, William Lemacks, in his capacity as Sheriff of Clayton County, Georgia, Ronnie Clackum, in his capacity as Chief of Police of Clayton County, Georgia, Robert Keller, in his capacity as District Attorney of Clayton County, Georgia, J.L. Massengale, Thomas David Ward, Rick Webster, R.V. McCain, and Brian Crisp, Defendants.

Civ. No. 1:91–cv–2741–JEC.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 22, 1993.

Joseph Michael Todd, Office of Joseph Michael Todd, Jonesboro, GA, for plaintiff.

Theodore Freeman, William T. Mitchell, Drew, Eckl & Farnham, Atlanta, GA, Larry A. Foster, Foster & Foster, Jonesboro, GA, for defendants.

## ORDER

CARNES, District Judge.

This case is presently before the Court on Defendants' Motion for Partial Summary Judgment [43]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the motion should be granted in part.

## BACKGROUND

The facts of this case appear to be largely undisputed. Plaintiff is a bail bondsman in Morrow, Georgia. (Defs.' Stmnt. of Mat. Facts ¶ 1). On or about November 20, 1989, Plaintiff received a telephone call requesting that he pick up a certain individual, Julie McClure ("McClure"), at a gas station in Forest Park. (*Id.* ¶¶ 2–5). The meeting had been arranged by the surety on McClure's bond, who wanted to come off the bond. (*Id.* ¶ 3). The surety apparently lured McClure to the meeting site by telling her that he would sell her drugs at the gas station. (*Id.* ¶ 6).

Unknown to Plaintiff or the surety, however, McClure was working as an informant for the Clayton County Narcotics Unit ("CCNU") and informed the CCNU of the rendezvous. (*Id.* ¶¶ 8, 9). Riding in the car with McClure when she arrived at the gas station was Defendant Massengale, an undercover agent with the CCNU. (*Id.* ¶ 12). Plaintiff attempted to stop the car in which McClure and Massengale were riding and, when the vehicle did not stop, drew a weapon and ordered McClure out of the car.

(Compl. ¶ 14). Thinking that a drug "rip off" was in progress, Massengale gave the code word for emergency back-up. (Id. ¶ 15). The other Defendant members of the CCNU quickly arrived on the scene and forcibly arrested Plaintiff. (Id. ¶ 16).

As a result of this incident, Plaintiff's "jail identification card" was taken away from him. (Defs.' Stmnt of Mat. Facts ¶ 28). Due to the loss of his card, Plaintiff alleges that he was unable to work as a bail bondsman in Clayton County and, as a result, lost his job. (Id. ¶ 29, 30). Plaintiff was subsequently tried and acquitted on charges arising out of the incident at the gas station. (Id. ¶ 26).

Plaintiff then brought this action pursuant to 42 U.S.C. § 1983, alleging that Defendants' actions violated his rights under the Fourth, Fifth, Sixth, and Eighth Amendments, as well as his right to procedural and substantive due process and equal protection. Plaintiff also made a pendent state law claim for assault and battery. (Compl. ¶ 28). Defendants moved for partial summary judgment and, in his response, Plaintiff apparently dropped his Eighth Amendment and equal protection claims. (Pl.'s Br. in Supp. of Resp. to Defs.' Mot. for Partial Summ. J. [Pl.'s Br.] at 13, 18).

## DISCUSSION

Defendants do not argue that summary judgment is appropriate as to all of Plaintiff's claims. Defendants admit that there is a genuine question of material fact as to Plaintiff's Fourth Amendment (excessive force) and state law claims, but have moved for summary judgment as to most of Plaintiff's other claims.

### A. The Summary Judgment Standard

██ Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552.

██ The movant bears the initial responsibility of asserting the basis for his motion. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2554. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleading" and present competent evidence [1] designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue of material* fact." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

██ A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248, 106 S.Ct. at 2510. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50, 106 S.Ct. at 2510–11. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v.*

1. The non-moving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

*Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511. Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

### B. *Fifth/Sixth Amendment Claims*

■ The sole specific reference to the Fifth Amendment in Plaintiff's Complaint is that Defendants "depriv[ed] Plaintiff of his liberty by subjecting him to unwarranted and unreasonable restraints on his person without due process, in violation of his rights under the Fifth Amendment." (Compl. ¶ 22(c). In his response to Defendants' Motion for Summary Judgment, Plaintiff devotes the entire "Fifth/Sixth Amendment" section to arguing that he has a property interest in a jail identification card, (Pl.'s Br. at 9–13),—something that is relevant only to his due process claim. It is axiomatic that the Fifth Amendment due process clause applies only to the federal government, while the Fourteenth Amendment due process clause applies to the states. *Bartkus v. Illinois*, 359 U.S. 121, 124, 79 S.Ct. 676, 678, 3 L.Ed.2d 684 (1959). Because Plaintiff has not even made a valid claim under the Fifth Amendment, the Court concludes that summary judgment is appropriate as to Plaintiff's Fifth Amendment claim.[2]

■ Plaintiff's sole specific reference to the Sixth Amendment in his Complaint is that Defendants "subject[ed] Plaintiff to punishment without the benefit of a trial by jury, in violation of his rights under the Sixth and Eighth Amendments." (Compl. ¶ 22(b)). His only mention of the Sixth Amendment in his Response to Defendant's Motion for Summary Judgment is his conclusory assertion that his "rights under the Fifth and Sixth amendments to the right of confrontation and cross-examination were denied." (Pl.'s Br. at 12–13). Plaintiff has pointed to no competent evidence that would tend to show that a genuine question exists as to whether these conclusory statements are true, however. Accordingly, the Court concludes that Plaintiff has not met his burden under *Celotex* of showing that a genuine question exists as to an element upon which he will bear the burden of proof at trial and summary judgment is appropriate as to his Sixth Amendment claim.

### C. *Procedural Due Process Claim*

■ An individual's right to procedural due process is violated when the government interferes with his life, liberty, or property without adequate procedural safeguards. *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Accordingly, the threshold question in conducting the procedural due process analysis is whether Plaintiff had a liberty or property interest at all.

■ Defendants argue that Plaintiff does not have a valid procedural due process claim because he was an "at will" employee of the bonding company and, as a result, did not have a property interest in the job under Georgia law. (Defs.' Br. at 9). It appears to the Court, however, that Defendants have misconstrued the nature of Plaintiff's claim. The Court concludes that a fair reading of Plaintiff's Complaint and Response indicate that what Plaintiff is really saying is that he had a property interest in the jail identification card he was issued, and that Defendants could not refuse to give the card back to him without adequate procedural safeguards (*i.e.*, a hearing). (Compl. ¶ 68).

In order to have a property interest in a state benefit, an individual must have more than a "unilateral expectation" of the benefit—he must have a "legitimate claim of entitlement" to it. *Board of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. The Court concludes that a genuine question exists as to whether Plaintiff had a legitimate claim of entitlement to the card and, if so, whether

---

**2.** Defendants apparently assumed that Plaintiff was attempting to raise a Fifth Amendment self-incrimination claim due to failure to read him his *Miranda* rights, and addressed this argument. However, because Plaintiff never asserted a *Miranda* claim in his Complaint, the Court will not address this argument.

the county had to accord him greater procedural safeguards before taking the card away. *See Durham v. Jones,* 698 F.2d 1179, 1181 (11th Cir.1983) (implying that tow truck operator might have had legitimate claim of entitlement to being placed on sheriff's list of approved wrecker services if his service had previously been placed on the list, but absent this had only unilateral expectation of being on list); *McCollum v. City of Powder Springs,* 720 F.Supp. 985, 989 (N.D.Ga.1989) (Camp, J.) (once city promulgates ordinance that outlines standards for issuance of malt-beverage license, applicants for such license possess protectible property interest that may be basis for due process claim). Accordingly, the Court denies Defendants' Motion for Summary Judgment as to Plaintiff's procedural due process claim.

### D. *Substantive Due Process Claim*

 Defendants argue that "[s]ince the loss of his job ... does not constitute a fundamental right as he had no property interest in this position ..., plaintiff has no standing to assert a substantive due process claim and as a matter of law it should be dismissed." (Defs.' Br. at 12). The Court concludes, however, that Defendants' rationale is flawed. Even assuming that Plaintiff does not have a fundamental right to his identification card (and he does not appear to assert that the right is fundamental), this does not mean that he "has no standing to assert a substantive due process claim." It merely means that Defendants need only justify any infringement on this right under the "rational basis" standard rather than the "compelling interest" test. Because Defendants have not attempted to justify the seizure of Plaintiff's identification card at all, the Court will not conclude that they had a rational basis for their actions. Accordingly, summary judgment is not appropriate as to Plaintiff's substantive due process claim.

### E. *Liability of the County and the Individual Defendants in their Official Capacities*

Defendant Clayton County, Defendant Clayton County Board of Commissioners, and the individual Defendants in their official capacities ("the County") have moved to dismiss the claims against them.[3] Plaintiff asserts that the County is liable for the actions of the individual Defendants because "there exists a policy or custom of excessive force during the course of an arrest." (Pl.'s Br. at 22). In support of his assertion, Plaintiff points to other incidents involving the CCNU's use of excessive force. (*Id.*; Pl.'s Stmnt. of Mat. Facts ¶¶ 30–33).

 A local government is liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). Plaintiff asserts that the County is liable because it "fail[ed] to supervise properly the training and conduct of Defendant Police Officers." (Compl. ¶ 23(a)). As the Eleventh Circuit Court of Appeals has observed, when interrelated claims of failure to train and failure to supervise and provide corrective training are raised, the court should focus on the element common to both claims: the alleged failure to train. *Kerr v. City of West Palm Beach,* 875 F.2d 1546, 1555 (11th Cir.1989).

 In order to establish municipal liability for failure to train, Plaintiff must prove: (1) that the County in fact inadequately trained its employees in the lawful execution of their duties, and (2) that this failure to train was actually a County policy. *Kerr,* 875 F.2d at 1555. With regard to the second element, the Supreme Court has held that "only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 1204–05, 103 L.Ed.2d 412 (1989).

---

**3.** Because suit against a party in his or her official capacity is the same as suit against the government entity of which the officer is an agent, *Owens v. Fulton County,* 877 F.2d 947, 951 n. 5 (11th Cir.1989), the Court will address all these Defendants as "the County."

By arguing solely that municipal liability is appropriate due to the County's knowledge of prior similar incidents, Plaintiff is apparently asserting that "the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the [county] policy makers, who, nevertheless, are 'deliberately indifferent' to the need." *Id.* 489 U.S. at 389 n. 10, 109 S.Ct. at 1205 n. 10. As the Eleventh Circuit has observed, "the frequency of constitutional violations may, in itself, provide sufficient circumstantial evidence that a municipality has chosen to allow its officers to act without adequate training." *Kerr,* 875 F.2d at 1556. However, mere "random acts or isolated incidents" are insufficient to establish a custom or policy. *Depew v. City of St. Marys,* 787 F.2d 1496, 1499 (11th Cir.1986).

■ Plaintiff clearly will have the burden of establishing municipal liability at trial. Accordingly, under the municipal liability theory he has chosen to pursue, Plaintiff has the burden for summary judgment purposes of pointing to competent evidence of sufficient prior incidents of excessive force by the CCNU to create a genuine question as to whether the County had a policy of using excessive force in making arrests. In his reply to Defendants' Motion for Summary Judgment, Plaintiff has attempted to carry this burden by pointing to three prior incidents involving claims of excessive force against members of the CCNU. (Pl.'s Br. at 22; Pl.'s Stmnt. of Mat. Facts ¶¶ 30–32). One of the incidents involved a shooting in approximately 1983, (Clackum Dep. at 41; Lemacks Dep. at 27–28), another involved a federal suit against Defendant Crisp that was dismissed before trial approximately six or seven years prior to the events of this case, (Crisp Dep. at 39–40), and the third involved a lawsuit approximately one and a half to two years prior.[4] The Court concludes that the fact that three remotely comparable allega-

tions of similar conduct were made against members of the CCNU during the six year period preceding the incident in question is insufficient as a matter of law to create a question of fact as to whether the County had a policy of using excessive force in making arrests. *See Burnette v. Ciolino,* 750 F.Supp. 1562, 1564–65 (M.D.Fla.1990) (evidence of five shootings by county's deputies in five-year period "nothing more than isolated incidents that clearly cannot be said to establish or create a 'custom' or 'widespread practice' that use of unreasonable deadly force would be permitted."). *See also Thelma D. v. Board of Education,* 934 F.2d 929, 933 (8th Cir.1991) (five instances of misconduct over sixteen year period do not "comprise a persistent and widespread pattern of unconstitutional misconduct."); *Gomez v. Metro Dade County,* 801 F.Supp. 674, 679–80 (S.D.Fla.1992) (evidence of four prior complaints of sexual harassment insufficient to establish custom); *Prieto v. Metropolitan Dade County,* 718 F.Supp. 934, 938–39 (S.D.Fla.1989) (evidence of four isolated incidents over two year period insufficient to establish custom); *cf. Kerr v. City of West Palm Beach,* 875 F.2d 1546, 1556 (11th Cir. 1989) (evidence that city knew that apprehension of suspects by canine unit frequently resulted in injury to suspect sufficient to support jury verdict holding city liable); *Depew v. City of St. Marys,* 787 F.2d 1496, 1499 (11th Cir.1986) (evidence of at least five prior incidents involving excessive force and testimony that police had no training on use of force sufficient to support verdict holding city liable). Rather, the Court concludes that such incidents are, as a matter of law, "random acts or isolated incidents." Accordingly, the Court grants the municipal Defendants' Motion for Summary Judgment.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment [43]

---

4. Plaintiff also asserts that Defendant McCain was involved in a prior excessive force incident. (Pl.'s Stmnt. of Mat. Facts ¶ 33). However, the deposition Plaintiff cites in support of this allegation does not refer to any previous incident involving McCain. (McCain Dep. at 40–41). Plaintiff also alleges that Defendant Crisp was "charged and reprimanded for an excessive force

incident prior to this particular incident." (Pl.'s Stmnt. of Mat. Facts ¶ 32). However, the cited deposition does not state that Crisp was "charged" for this incident (the dismissed case mentioned above), and Crisp specifically testified that he was not reprimanded for the incident. (Crisp Dep. at 41).

is **GRANTED IN PART** and **DENIED IN PART.**

SO ORDERED.