[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13610
Non-Argument Calendar
_____

D.C. Docket No. 0:16-cv-62770-WPD


KENNETH WILK,

Plaintiff-Appellant,

versus

ST. LUCIE COUNTY FLA. SHERIFF OFFICE,
BROWARD COUNTY FLA. SHERIFF OFFICE,
NEIL SPECTOR,
KEVIN BUTLER,
ROY VRCHOTA, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 2, 2018)

Before WILLIAM PRYOR, MARTIN and JILL PRYOR, Circuit Judges.

PER CURIAM:

Kenneth Wilk, a federal prisoner, appeals *pro se* the *sua sponte* dismissal of his amended complaint that his civil rights were violated in the events that led to his conviction for seven crimes, including the murder of Deputy Sheriff Todd Fatta of the Broward County Sheriff's Office, and a civil judgment against him for Fatta's wrongful death. *See* 42 U.S.C. § 1983. We affirm.

## I. BACKGROUND

In 2007, a federal jury convicted Wilk of seven crimes, including the murder of Deputy Fatta and the attempted murder of Sergeant Angelo Cedeno as they aided federal agents executing a warrant to search Wilk's home. *See United States v. Wilk*, 572 F.3d 1229, 1232–34 (11th Cir. 2009). In 2001, while Wilk's domestic partner, Kelly Jones, was awaiting trial for crimes involving child pornography, Wilk threatened officers and posted messages online that he "hunt[ed] cops." In 2004, agents obtained a warrant to search Wilk's home after an undercover agent received child pornography from Jones and intercepted an instruction she gave Wilk to delete incriminating emails. Wilk shot Fatta and Cedeno as they entered his residence to execute the warrant. *Id.* The district court sentenced Wilk to imprisonment for life, fined him $25,000, and ordered the forfeiture of his interest in his house. Later, the district court amended its judgment and ordered Wilk to

2

pay more than $4 million in restitution, part of which was payable to Fatta's family, after the  family settled their civil action against Wilk, the Broward County Sheriff's Office, and other persons for wrongful death. Wilk appealed his convictions and we affirmed. *Id.* at 1234–39.

In 2010, Wilk moved for relief from his convictions and sentence. 28 U.S.C. § 2255. Wilk attached to his motion a newspaper article describing a reprimand Deputy Sheriff Neil Spector of the St. Lucie Sheriff's Office received for his improper participation in plea negotiations with and his role as a paid defense witness for Mark Cohen. The district court denied Wilk's motion, and we denied Wilk's application for a certificate of appealability.

In 2016, Wilk filed his civil action against Spector, the sheriff's offices of St. Lucie and Broward Counties, two former sheriffs of Broward County, and several Broward County deputies. *See* 42 U.S.C. § 1983. Wilk complained about Spector committing extortion, fabricating evidence, and causing Wilk to loss his liberty and property in violation of his rights to due process and equal protection under the Fifth and Fourteenth Amendments. Wilk alleged that, after Jones was arrested in 2001, Wilk paid Spector $500 to release Jones's car and rejected Spector's offer to dismiss Jones's pornography charges for $10,000. Wilk also alleged that he had a plan to expose Spector, but Spector discovered the plan and fabricated evidence to obtain warrants to arrest Wilk and search his home.

3

According to Wilk, in 2004, Spector led a group of unwitting deputies to execute the warrants and planted evidence in Wilk's home that was used to convict him.

Wilk complained about a conspiracy by the St. Lucie's Sheriff's Office and its officers to withhold exculpatory evidence. Wilk alleged that, after the public disclosure of Spector's corruption, the sheriff and administrators in St. Lucie County conspired to limit their liability by withholding reports regarding Spector's extortion of citizens and criminal defendants. Wilk requested that the district court order the Sheriff's Office to produce Spector's personnel file, including disciplinary reports and the findings from internal affairs investigations.

Wilk also complained that the Broward County Sheriff's Office, its former sheriffs, and its administrators violated office protocol for serving a high risk search warrant; that they conspired to defraud Wilk and his insurance company and to deny him due process and equal protection by blaming him for Fatta's death; and that they unlawfully seized evidence from Wilk's home. Wilk alleged that the Broward County Sheriff's Office customarily used trained tactical teams to execute risky warrants, but the office sent to Wilk's home a group of deputies who were inadequately equipped and trained and were under the influence of drugs. Wilk also alleged that the Sheriff's Office, its former sheriffs, and its deputies concealed internal reports and gave false testimony during the Fattas' civil trial about office protocol for serving warrants, which resulted in a judgment against Wilk that was

4

paid by his homeowners insurance provider. Wilk requested copies of reports describing the protocol the Broward County Sheriff's Office followed to execute warrants.

The district court adopted the recommendations of a magistrate judge to dismiss *sua sponte* Wilk's amended complaint for failure to state a claim, 28 U.S.C. § 1915(e)(2)(B), and to decline to exercise supplemental jurisdiction over Wilk's claims under Florida law. The district court ruled that the two sheriff's offices were not legal entities subject to suit; that their officers were immune from suit in their official capacities; and that Wilk had an adequate remedy under Florida law to sue the State for the actions of Broward County officials that caused Wilk to lose ownership interest in his home and to incur the judgment that his insurer paid. With respect to Wilk's claims against the officials of Broward County, the district court ruled that Wilk's allegations were insufficient to state a plausible claim of supervisory liability against its former sheriffs; that Wilk's complaint contained no facts that the officials agreed to violate Wilk's right to due process; and that Wilk failed to identify either a protected class to which he belonged or a similarly situated individual who had been treated more favorably. As to Wilk's claims against officials of St. Lucie County, the district court ruled that Wilk's claims about his actual innocence in shooting Fatta, about officials withholding exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83

5

(1963), and about his requests to obtain personnel and disciplinary files to establish his innocence necessarily implicated his convictions and were barred under *Heck*. And because "none of [Wilk's] federal claims . . . survived screening," the district court declined to exercise supplementary jurisdiction over Wilk's claims of fraud and conspiracy in violation of state law.

## II. STANDARDS OF REVIEW

We apply two standards of review in this appeal. We review *de novo* the *sua sponte* dismissal of a complaint for failure to state a claim. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). Although we read *pro se* filings liberally, *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008), we will not "rewrite an otherwise deficient pleading in order to sustain an action," *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quoting *GJR Invs., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)). We review for abuse of discretion the failure of a magistrate judge to *sua sponte* recuse, *see Murray v. Scott*, 253 F.3d 1308, 1310 (11th Cir. 2001), and the refusal of a request for discovery, *see Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011). We also review for abuse of discretion a decision to decline to exercise supplemental jurisdiction over claims under state law. *Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., LLC*, 596 F.3d 1313, 1328 (11th Cir. 2010).

## III. DISCUSSION

Wilk challenges the dismissal of his amended complaint. Wilk argues that he could sue the sheriff's offices; that the officials in St. Lucie and Broward Counties are liable in their official capacities for violating state and county policy and for their manipulation of evidence; that he alleged facts sufficient to establish civil conspiracies by the officers in St. Lucie County and by the officers in Broward County; and that his claims of conspiracy are not barred under *Heck*. Wilk also argues that the magistrate judge should have recused from his case; that he was entitled to discovery of reports about Spector; and that the district court should have considered his claims that the officers violated state law. These arguments fail. We address each in turn.

*A. The Sheriff's Offices of St. Lucie and Broward Counties Are Not Subject to Suit.*

The district court correctly dismissed Wilk's claims against the sheriff's offices. "Sheriff's departments and police departments are not usually considered legal entities subject to suit, but capacity to sue or be sued shall be determined by the law of the state in which the district court is held." *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (internal citations omitted); Fed. R. Civ. P. 17(b). Under Florida law, sheriff's offices lack the legal capacity to be sued. *See Fla. City Police Dep't v. Corcoran*, 661 So. 2d 409, 410 (Fla. Dist. Ct. App. 1995).

*B. Wilk Failed to Allege that St. Lucie or Broward Counties Had Official Policies or Customs that Violated His Federal Rights.*

Section 1983 provides a remedy for deprivations of federal rights by a person acting under color of state law. *Almand v. DeKalk Cty.*, 103 F.3d 1510, 1513 (11th Cir. 1997). Unlike the sheriff's offices, Broward County is a "person" subject to suit under section 1983. *See Quinn v. Monroe Cty.*, 330 F.3d 1320, 1325 (11th Cir. 2003). The action against the former sheriffs and deputies of Broward County in their official capacities are "the same as a suit against the entity of which the officer[s] . . . [are] agent[s]." *See McMillan v. Monroe Cty., Ala.*, 520 U.S. 781, 785 n.2 (11th Cir. 1997) (internal quotations omitted and alterations adopted); *see also Lucas v. O'Loughlin*, 831 F.2d 232, 235 (11th Cir. 1987) (holding county liable for an official capacity suit against a sheriff in Florida).

To establish liability against a local government under section 1983, a plaintiff must prove a violation of his federal rights; that a custom or policy of the local government caused the violation of his rights; and that the violation injured him. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). A policy is a decision that is officially adopted by the county or created by a central official, whereas "[a] custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). "Normally[,] random acts or isolated incidents are insufficient to establish a

8

custom or policy." *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986).

For an officer's policy decisions to be attributable to the local government, the official must have final policymaking authority. *Campbell v. Rainbow City*, 434 F.3d 1306, 1312 (11th Cir. 2006). Whether an official is a "final policymaker" is dependent on state law. *McMillian*, 520 U.S. at 785–86. We have ruled that police chiefs in Florida enjoy final policymaking authority for law enforcement matters in their municipalities. *Cooper v. Dillon*, 403 F.3d 1208, 1222 (11th Cir. 2005); *see* Fla. Const. Art. VIII, § 1(d) (labeling sheriffs "county officers"); Fla. Const. Art. VIII, § 2(b) ("[m]unicipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government").

The district court correctly dismissed Wilk's claims against the former sheriffs and the deputies of Broward County and the officers of St. Lucie County because Wilk failed to allege that the officers' violations of his rights were attributable to any official custom or policy. Wilk's allegations that the officers violated his rights were based on "a single act of . . . misconduct." *See McDowell*, 392 F.3d at 1293 (quoting *Anderson v. City of Atlanta*, 778 F.2d 678, 685 (11th Cir. 1985)). Wilk identified no policy in Broward County permitting, or another incident involving, the fabrication of evidence, the concealment of exonerating evidence, or the concealment of a violation of an office policy or procedure that

9

resulted in a civilian instead of the sheriff's office being blamed for the death of an officer. *See Depew*, 787 F.2d at 1499. Wilk also alleged no policy or practice by the Sheriff's Office of St. Lucie County of withholding evidence to limit liability for its officers' misdeeds. Although Wilk alleged that Spector's misconduct was widespread, he was not a final policymaker for the Sheriff's Office of St. Lucie County and could not be liable in his official capacity as an officer of the County. *See Campbell*, 434 F.3d at 1312.

### C. Wilk Failed To State a Claim that the Officers in Broward County or in St. Lucie County Conspired To Violate his Constitutional Rights.

To establish a claim of conspiracy under section 1983, "a plaintiff must show that the parties reached an understanding to deny the plaintiff his or her rights and prove an actionable wrong to support the conspiracy." *Bailey v. Bd. of Cty. Comm'rs of Alachua Cty., Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992) (internal quotation marks and citation omitted) (alteration adopted). The complaint must inform the defendants "of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed." *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984).

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. A violation of procedural due process occurs where the state fails to provide due process in the deprivation of a protected liberty

10

interest and "refuses to provide a process sufficient to remedy the procedural deprivation." *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc). A claim "alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). Ordinarily, all the process that is required "in a civil case is proper notice and service of process and a court of competent jurisdiction." *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1027 (5th Cir. Unit B 1982).

Wilk failed to state a claim that the former sheriffs and officers of Broward County deprived Wilk of due process as part of a conspiracy to shield the sheriff's office from liability. Wilk alleged that the officers' actions resulted in the entry of a civil judgment against him, but he did not allege that he was denied notice of or the opportunity to present evidence and be heard before entry of the judgment. The district court did not err in dismissing Wilk's claim of conspiracy on the ground that he "failed to state a facially sufficient claim of a constitutional violation" and necessarily was "unable to support a conspiracy claim" against the officers of Broward County.

Wilk also failed to state a claim that the officers of St. Lucie County conspired to violate his constitutional rights. The district court ruled that Wilk's claim that the officers' concerted refusal to produce Spector's personnel and

11

disciplinary files was barred by *Heck*, but we need not address the application of *Heck* because we can affirm on the basis that Wilk failed to satisfy the threshold requirement to establish that a conspiracy existed. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("We may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below."). "In civil rights and conspiracy actions, conclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint." *Kearson v. S. Bell Tel. & Tel. Co.*, 763 F.2d 405, 407 (11th Cir. 1985). Wilk alleged no facts that the officers "reached an[y] understanding," *see Bailey*, 956 F.2d at 1122, much less an understanding to withhold exculpatory evidence. The district court correctly dismissed Wilk's claim of a civil conspiracy by the officers of St. Lucie County.

### D. The Magistrate Judge Was Not Required to Sua Sponte Recuse From Wilk's Civil Action.

The magistrate judge did not abuse his discretion by failing *sua sponte* to recuse from Wilk's civil action. Recusal is necessary only when "an objective, fully informed lay observer would entertain significant doubt about the judge's impartiality." *In re Walker*, 532 F.3d 1304, 1310 (11th Cir. 2008) (quoting *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000)). A magistrate judge should recuse when his conduct reflects "such pervasive bias and prejudice that it constitutes bias against a party," but "rulings adverse to a party . . . [do not]

12

constitute pervasive bias." *Hamm v. Members of Bd. of Regents of State of Fla.*, 708 F.2d 647, 651 (11th Cir. 1983). Wilk argues that the magistrate judge's participation in Wilk's prior criminal proceedings created an appearance of partiality, *see* 28 U.S.C. § 455(a), but neither the magistrate judge's adverse rulings, nor his familiarity with Wilk's criminal case mandated recusal.

### E. Wilk Was Not Entitled to Obtain Discovery from Officials of St. Lucie County.

Wilk argues that the district court prematurely dismissed his complaint before allowing him to obtain discovery about Spector's misconduct, but we disagree. A district court is required to screen any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" before allowing service of process and allowing discovery. 28 U.S.C. § 1915A(a). Because the district court determined that Wilk's amended complaint failed to state a claim for relief, Wilk was not entitled to conduct discovery.

### F. The District Court Did Not Abuse Its Discretion When It Declined to Exercise Supplemental Jurisdiction Over Wilk's State Law Claims.

The district court did not abuse its discretion when it declined to exercise supplemental jurisdiction over Wilk's remaining claims under state law. A district court may decline to exercise supplemental jurisdiction over a state claim after dismissing all federal claims over which it has original jurisdiction. *Id.* § 1367(c)(3). We "encourage[ ] district courts to dismiss any remaining state

13

claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004).

## IV. CONCLUSION

We **AFFIRM** the dismissal of Wilk's amended complaint.